OPINION OF THE COURT
Matthew F. Coppola, J.
When a relative of one of the parties to a divorce proceeding writes a letter to the Probation Department pending preparation of a report regarding visitation, is the writer accorded an absolute privilege, or may she be found liable in defamation? *115 This is the major issue facing the court on this motion for summary judgment.
There is presently pending in this court an action for divorce between plaintiff Geoffrey Garson and Vicki Garson. The defendant in this action, Susan Hendlin, is Vicki Garson’s aunt.
The divorce action was commenced in March of 1985 by Geoffrey. Among other items of relief, he sought custody of the parties’ two children and possession of the marital premises. By stipulation, Geoffrey obtained temporary custody of the children and possession of the marital premises, with Vicki receiving temporary maintenance. In October of 1985, they further stipulated to refer the issue of visitation for investigation by the Westchester County Department of Probation, which agency assigned the investigation to probation officer Marjorie Boston. Boston’s report was sent to the court on or about March 4, 1986.
On or about March 8, 1986, defendant, with whom Vicki was then living, wrote a letter to Boston, which letter is the subject of this action. The excerpted portion of the letter upon which the complaint is based reads as follows:
"I was Vicki’s 'ear’ during that most traumatic time when Mr. Garson’s machinations succeeded in stripping her abruptly of husband, children, home and possessions. When she first came she looked like a concentration camp victim and her reactions were such that if she caused a spill or similar insignificant household accident, she would look frightened and look at you expecting ridicule. She had been subjected to such humiliations and cruel behavior, one could not think beyond trying to give a little human kindness, freedom from harassment and whatever shreds of comfort or support could be offered in a time of such shock.
"Perhaps if we had said she couldn’t stay -here, Vicki’s lawyers would have had to proceed differently, and Mr. Gar-son’s plan to drive her out would not have succeeded. He would not then have had a clear coast to feed malicious behavior patterns to the children or to frighten, bribe or intimidate them into complete alienation from their mother.
"If ever there were children needing the intervention of a court to try to counteract evil influence — I use the word advisedly — it is these children.
"Vicki has been cast out and her children alienated from her for no good cause.
*116 “Geoffrey on the other hand, in whose hands the children now are, has frequently through the years exhibited behavior that most people consider abnormal.
“Now he has decided to keep the children from their mother; what lies he has told them is not known. We do know that far from counselling them to be considerate and compassionate to their mother after her hospitalization in the fall of '84, he was capable of not only condoning, but inciting them to tease her, harass her, humiliate her and show disrespect with his approval and applause at home and elsewhere.
"He is obviously indifferent or totally unaware that in enlisting them to behave in a way that would help drive her out of the house, he was also teaching them that to act bad is good — and to act bad to your mother who after all used to pester you to 'go to bed’ 'do your homework’ is extra fun. The man who would teach such behavior to his young children because it suited his purpose, and not perceive the great harm to them, is not ever going to be able to inculcate any kind of morality or humanity. He is without normal human feelings.”
Defendant now moves for summary judgment. She avers that she wrote the letter at the behest of her niece, who was fearful that Roston would not share her belief that the children were in need of psychiatric care.
The first ground urged for this application is the claim that the context in which the letter was written renders it absolutely privileged. It is defendant’s contention that the context was that of a judicial proceeding, that defendant’s position was analogous to that of a witness at trial, and that the probation officer was an agent of the court.
“In judicial proceedings the protected participants include the Judge, the jurors, the attorneys, the parties and the witnesses (see Restatement, Torts 2d, §§ 585-589; 2 NY PJI, pp 728-729, 1982 Supp, pp 66-68). They are granted this protection for the benefit of the public, to promote the administration of justice, and only incidentally for the protection of the participants.” (Park Knoll Assocs. v Schmidt, 59 NY2d 205, 209.) Policy considerations, however, limit the conference of absolute privilege to a limited number of situations (Stukuls v State of New York, 42 NY2d 272, 278; Andrews v Gardiner, 224 NY 440, 448). The test, therefore, is a stringent one: "The immunity does not attach solely because the speaker is a Judge, attorney, party or a witness, but because the statements are, in the words of Lord Mansfield, 'spoken in office’ *117 (R. v Skinner, Lofft, p 55, quoted in Andrews v Gardiner, 224 NY 440, 446, supra). ” (Park Knoll Assocs. v Schmidt, supra, at 210.)
Considering then that the absolute privilege is markedly limited, that its primary purpose is to protect the integrity of the judicial proceeding, and that it is confined to utterances occurring within the perimeters of the proceeding, the court is of the opinion that the publication issue is not clothed with an absolute privilege. The letter written by defendant was not solicited by anyone in an official capacity in the judicial proceeding. It was a gratuitous missive from someone who had no legally cognizable interest in the judicial proceeding. To allow a person in the position of nonparticipant to gratuitously forward a publication and then claim the protection of absolute privilege would circumvent the purpose of limiting the absolute privilege and would serve no useful legal or social function.
Moreover, if defendant is accurate in her assessment of her own intent and the immediate demands of the situation, then she has the protection of a qualified privilege. A publication enjoys a qualified privilege when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.” (Toogood v Spyring, 1 CM & R 181, 149 Eng Rep 1044, quoted in Prosser, Torts § 115, at 786 [4th ed]; and see, Toker v Pollak, 44 NY2d 211, 219.) However, this is not something that can be determined as a matter of law, at least not in this action. Whether defendant can establish this privilege will ultimately be determined by the trier of the fact. There is a showing on the papers that defendant will be able to establish the interest requisite to warrant a qualified privilege here, in which case the burden will be upon plaintiff to prove that she acted from malice, as the complaint alleges.
Defendant also claims entitlement to summary judgment because the allegedly offensive words were constitutionally protected expressions of opinion. As a general rule, a writing will be considered libelous if it " 'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.’ ” (Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 379, cert denied 434 US 969, quoting Sidney v MacFadden Newspaper Publ. Corp., 242 NY 208, 211-212.) The language utilized in *118 the letter written by defendant can certainly be found to tend to induce right-thinking people to have an evil opinion of plaintiff. Moreover, much of what defendant wrote consists of factual conclusions, unsupported by underlying facts. In any event, the assertions are not couched as opinion.
Finally, the absence in the complaint of an allegation of special damages is not fatal thereto, considering the tenor of the letter and the underlying claim (Matherson v Marchello, 100 AD2d 233, 236-237: "Thus, unlike the law of slander, in the law of libel the existence of damage is conclusively presumed from the publication itself and a plaintiff may rely on general damages”).
For the foregoing reasons, the motion is denied.