GEOFFREY GARSON, Respondent, v SUSAN HENDLIN, Appellant.

Second Department, September 26, 1988

*Bleakley & Schmidt (William H. Mulligan, Jr.,* and *Frank J. Ingrassia* on the brief), for appellant.

*Feiden, Dweck & Sladkus (Harvey I. Sladkus* of counsel), for respondent.

### OPINION OF THE COURT

KOOPER, J.

■ ■ Where a relative of a party involved in a divorce proceeding transmits an allegedly defamatory letter to the County Probation Department seeking to influence its recommendation with respect to the scheduling of psychiatric evaluations of the children involved, are the contents of the letter to be afforded an absolute privilege or are there circumstances under which an action for defamation may be maintained against the author of the letter? We answer the foregoing question by concluding that such a communication is qualifiedly privileged, thereby necessitating the pleading and proof of malice as a prerequisite to the maintenance of suit. Inasmuch as the plaintiff failed to produce evidentiary proof of actual malice in opposition to the defendant's motion for summary judgment, the complaint must be dismissed.

### I

The pertinent facts are undisputed and disclose that in or about November 1984, after approximately 18 years of marriage, the plaintiff Geoffrey Garson commenced an action

seeking a divorce from his wife, Vicki Garson, in the Supreme Court, Westchester County. In May 1985 the plaintiff and Vicki Garson entered into a stipulation which provided, *inter alia,* that he was to be awarded custody pendente lite of the parties' two infant children and possession of the marital residence. Thereafter, a second stipulation was executed under which it was agreed, *inter alia,* that the issue of Vicki's visitation would be submitted to the Westchester County Probation Department for review and recommendation to the Supreme Court. On or about March 4, 1986—after interviews with the Garsons and their children were conducted by the Probation Department—a report was issued by Probation Officer Marjorie Roston and subsequently approved on March 14, 1986, by her Supervising Probation Officer Anthony D'Angelo.

The Probation Department's findings were submitted to the Supreme Court, Westchester County, where the Garsons' divorce action was pending. In the report, it was noted that Mrs. Garson and the children had agreed to monthly visitation and further noted that Mrs. Garson had requested that the children receive psychiatric evaluation. The Probation Department declined, however, to recommend that the children undergo psychiatric evaluations as requested by Mrs. Garson.

## II

Shortly after the submission of the probation report to the Supreme Court, Ms. Roston received a letter dated March 8, 1986, from the defendant, Susan Hendlin, Mrs. Garson's aunt. The record reveals that after the Garsons had separated, Vicki Garson temporarily resided with her aunt from December 1984 to May 1985 during which time the defendant witnessed telephone conversations between Vicki Garson and her children and discussed these conversations—as well as other matters pertaining to the Garsons' marital discord— with Vicki Garson. The letter of March 8, 1986—written by the defendant at the request of Mrs. Garson—contained various observations and comments with respect to the plaintiff's relationship with the parties' two children, and forms the basis of the plaintiff's defamation action.

In May 1986, the plaintiff commenced the instant defamation action alleging that certain passages in the defendant's letter were defamatory. Thereafter, the defendant moved for summary judgment dismissing the complaint. In an affidavit

submitted in support of the motion, the defendant stated, *inter alia,* that Mrs. Garson had requested that she write the letter to the Probation Department; that her purpose in sending the letter was to support Mrs. Garson and to state her "plea for help on behalf of the minor children", and that while the letter was critical, it was "not intended to defame [the plaintiff], but rather to help my grandniece and grandnephew and their mother in the hope of preventing a permanent loss of relationship between mother and children". In a further affidavit submitted in support of the motion, defense counsel argued, *inter alia,* that the letter was entitled to an absolute privilege, inasmuch as it was "published in conjunction with a judicial proceeding". Alternatively, counsel argued, *inter alia,* that if an absolute privilege were not applicable, the letter was nevertheless qualifiedly privileged.

The Supreme Court denied the defendant's motion for summary judgment (136 Misc 2d 114). Initially, the court held that the letter did not fall within the narrow range of communications entitled to the protection of an absolute privilege. The court further determined, however, that it could not, as a matter of law, conclude that the letter was qualifiedly privileged, inasmuch as there were presented triable issues of fact in respect to the defendant's status as a person possessing a requisite interest in the custody matter to whom a qualified privilege could be extended. Finally, the court held that if the defendant established the existence of this requisite interest, it would become the plaintiff's burden to establish that the defendant was motivated by malice. It is from the foregoing determination that the defendant now appeals.

### III

■ On appeal, the defendant urges that her communication was entitled to the protections of an absolute privilege, theorizing that the letter was submitted as part of the Garsons' divorce proceeding and that the defendant "became, in effect, a witness to the proceeding" requiring that her "statements be entitled to protection as a participant therein". We disagree.

As the Court of Appeals has observed, "[a]bsolute privilege is based upon the personal position or status of the speaker and is limited to the speaker's official participation in the processes of government" *(see, Park Knoll Assocs. v Schmidt, 59 NY2d 205, 209; see also, Stukuls v State of New York, 42*

NY2d 272; *Santavicca v City of Yonkers,* 132 AD2d 656, 657; 44 NY Jur 2d, Defamation and Privacy, § 89, at 60-61). Moreover, "[i]n judicial proceedings the protected participants include the Judge, the jurors, the attorneys, the parties and the witnesses", who are afforded the protection of an absolute privilege "for the benefit of the public, to promote the administration of justice, and only incidentally for the protection of the participants" *(see, Park Knoll Assocs. v Schmidt, supra,* at 209; *Martirano v Frost,* 25 NY2d 505; *People ex rel. Bensky v Warden,* 258 NY 55, 59-60). It is significant, however, that the courts traditionally "confine absolute privilege to a very few situations" *(see, Park Knoll Assocs. v Schmidt, supra,* at 210) and have been reluctant to extend its applicability "to cases that would represent a departure from the policies which originally brought the doctrine into being" *(Stukuls v State of New York, supra,* at 277).

When measured against the foregoing criteria, it is apparent that the defendant—a nonparty unofficially submitting her comments to the County Probation Department in support of the position taken by one of the parties to a lawsuit—is not an individual whose communications are appropriately cloaked with the immunity of an absolute judicial privilege. To afford the defendant's informal communication the protections of an absolute privilege would represent a clear departure from the circumspect and narrow fashion in which the courts have applied the doctrine *(see, Park Knoll Assocs. v Schmidt, supra; Toker v Pollak,* 44 NY2d 211; *Stukuls v State of New York, supra).* The purpose of the judicial privilege is to afford Judges, litigants and witnesses the ability to participate "without fear or favor in the furtherance of a 'vigorous and independent administration of justice' " *(Stukuls v State of New York, supra,* at 275, quoting from *Yates v Lansing,* 5 Johns 282, 293; *Martirano v Frost, supra; cf., Abbott v Tacoma Bank of Commerce,* 175 US 409, 411).

The defendant herein is not a participant in the Garsons' matrimonial proceeding to the extent that the "independent administration of justice" and integrity of the judicial process require that her communications be clothed with an absolute privilege *(cf., Toker v Pollak, supra;* Sack, Libel, Slander and Related Problems §§ V1.2.1, V1.2). Further, the policy considerations implicated by the extension of absolute privilege have uniformly weighed heavily among the factors typically considered by courts in determining whether application of the privilege is warranted *(see, e.g., Park Knoll Assocs. v Schmidt,*

89 AD2d 164, 169, *revd on other grounds* 59 NY2d 205, *supra; see also, Stukuls v State of New York, supra,* at 277; *Toker v Pollak, supra; Andrews v Gardiner,* 224 NY 440, 446-447; *cf., Stilsing Elec. v Joyce,* 113 AD2d 353, 356-357; *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, 165, *affd* 41 NY2d 881). The special policy concerns which underlie the judicial privilege are not furthered by extending the cloak of absolute immunity to nonparticipants who chose to informally convey their opinions and beliefs in respect to issues to be resolved in a lawsuit *(cf., Di Tullio v Deacy,* 16 Misc 2d 565). In short, while communications intended to assist an agency charged with fashioning recommendations affecting children are to be encouraged, the benefits to be derived from fostering such communications, though potentially valuable, do not, under the circumstances here presented, warrant the application of an absolute immunity from suit *(cf., Toker v Pollak, supra).*

## IV

Alternatively, the defendant contends that her letter should be afforded the protections of a qualified privilege. The defendant argues, *inter alia,* that she "transmitted the subject letter to the Probation Department in the discharge of her private and moral duty as the aunt of the Garson children", and that she "had a legitimate and compelling interest in and duty to report her opinion on this matter to the Probation Department".

Although the application of absolute privilege is narrow in scope, "conditional privilege is not restricted within narrow limits and indeed is rather widespread in its application" (44 NY Jur 2d, Defamation and Privacy, § 76, at 41). As this court has recently observed, "[a] qualified privilege arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or a legal, moral, or social duty to speak, and the communication is made to a person having a corresponding interest or duty" *(see, Santavicca v City of Yonkers, supra,* at 657, citing *Byam v Collins,* 111 NY 143, 150; *see also, Toker v Pollak, supra; Stukuls v State of New York, supra; Kilcoin v Wolansky,* 75 AD2d 1, 6, *affd* 52 NY2d 995; *Shapiro v Health Ins. Plan,* 7 NY2d 56, 60, 61; *Dunajewski v Bellmore-Merrick Cent. High School Dist.,* 138 AD2d 557; *Matter of Kantor v Pavelchak,* 134 AD2d 352; *Licitra v Faraldo,* 130 AD2d 555; *Kaplan v MacNamara,* 116 AD2d 626, *lv denied* 68 NY2d 607; *Schwartzberg v Mongiardo,*

113 AD2d 172, 175, *lv denied* 68 NY2d 602). Moreover, it has been generally held that the term "duty" in the above-quoted definition should "not be confined to legal duties, but must include moral and social duties of imperfect obligation" *(Van Wyck v Aspinwall,* 17 NY 190, 193; *see also, Bingham v Gaynor,* 203 NY 27, 31; *Rucker v K Mart Corp.,* 734 SW2d 533 [Mo]; *Benson v Griffin Tel.,* 593 P2d 511 [Okla]; *Hall v Pizza Hut,* 153 Mich App 609, 396 NW2d 809; *James v Haymes,* 163 Va 873, 178 SE 18; 33 Am Jur 2d, Libel and Slander, § 127, at 126). Since "[t]he policy of the law is to encourage such communications" *(Kilcoin v Wolansky, supra,* at 6), "[a] qualified privilege serves to negate * * * malice or ill will flowing from a defamatory statement" *(Dunajewski v Bellmore-Merrick Cent. High School Dist., supra,* at 558; *Toker v Pollak, supra).*

The "reason for according protection to such defamatory communications is 'the common convenience and welfare of society,' that is, the recognition that on certain occasions the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability * * * outweighs the harm that may be done to the reputation of others" (Sack, Libel, Slander and Related Problems § V1.3.1, at 298; *Shapiro v Health Ins. Plan, supra,* at 60-61; *Bingham v Gaynor, supra;* 1 Seelman, Libel and Slander in the State of New York ¶ 248A, at 335 [rev ed]; Restatement [Second] of Torts, ch 25, Topic 3 ["Conditional Privileges"], tit A, Scope Note, at 258). In accord with the foregoing policy considerations, it has been observed that the individual asserting the defense of qualified privilege must establish that the allegedly defamatory statement was made upon an occasion furnishing a prima facie justification for its publication *(see, e.g., Park Knoll Assocs. v Schmidt, supra,* 59 NY2d, at 209-210; Sack, Libel, Slander and Related Problems § V1.3., at 296-297; 50 Am Jur 2d, Libel and Slander, § 196, at 700-701; 1 Harper and James, Torts, § 5.25, at 435; Jones, *Interest and Duty in Relation to Qualified Privilege,* 22 Mich L Rev 437, 438 [1924]; Restatement [Second] of Torts § 619 [1], at 316). There exists, however, no bright line test by which the courts identify with exactitude those occasions which are privileged and those which are not *(see,* Prosser and Keeton, Torts § 115, at 824-825 [5th ed]; Jones, *Interest and Duty in Relation to Qualified Privilege,* 22 Mich L Rev 437). Nevertheless, it has been noted in this respect that, "all that is necessary to entitle such communications to be regarded as privileged is, that the

relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others" *(Lewis v Chapman,* 16 NY 369, 375; *see also, Hahn v Kotten,* 43 Ohio St 2d 237, 331 NE2d 713; *Morse v Times-Republican Print. Co.,* 124 Iowa 707, 100 NW 867).

## V

After review of the competing policy concerns involved, we conclude that there attached to the defendant's communication upon the occasion of the Probation Department's investigation a qualified privilege arising by virtue of the defendant's significant familial interest in furthering the welfare of the Garson children. Notably, it has been "generally agreed that a qualified privilege attaches to communications relative to family matters, made in good faith to the proper parties, by members of a family, intimate friends, and third persons under a duty to speak" (50 Am Jur 2d, Libel and Slander, § 203, at 711; *see also,* Restatement [Second] of Torts § 597, at 277; Sack, Libel, Slander and Related Problems § V1.3.5, at 313; 44 NY Jur 2d, Defamation and Privacy, § 80, at 50-51; Annotation, *Libel and Slander: defamation of one relative to another by person not related to either, as subject of qualified privilege,* 25 ALR2d 1388; Annotation, *Communication between relatives or members of a family as publication or subject of privilege within law of libel and slander,* 78 ALR 1182; *see also, Wolf v Wolf,* 198 Misc 527; *Brown v Collins,* 402 F2d 209; *Manley v Manley,* 291 SC 325, 353 SE2d 312; *MacConnell v Mitten,* 131 Ariz 22, 638 P2d 689; *Nodar v Galbreath,* 462 So 2d 803 [Fla]; *Faber v Byrle,* 171 Kan 38, 229 P2d 718; *Stewart v Nation-Wide Check Corp.,* 279 NC 278, 182 SE2d 410; *Kroger Co. v Young,* 210 Va 564, 172 SE2d 720; *Cochran v Sears, Roebuck & Co.,* 72 Ga App 458, 34 SE2d 296). The defendant's letter, in which she sought to persuade the probation authorities to recommend psychiatric treatment for her grandniece and grandnephew, clearly falls within the parameters of the foregoing principle. The defendant was a family member whose limited publication of the disputed communication—made at Vicki Garson's request—was premised in large part upon her personal observations and knowledge of the events recounted and motivated by asserted concern for the best interests of the children. Moreover, there can be little doubt that there exists a perceptible social utility in

encouraging the disclosure of information which may assist an agency such as the Probation Department in formulating its recommendations concerning matters involving the best interests of infant children *(cf., Toker v Pollak, supra,* 44 NY2d, at 223). The information provided by a family member such as the defendant could, conceivably, enhance and supplement the record upon which probation officials rely in compiling their reports.

Further, the defendant was circumspect in her publication of the letter, transmitting it to the probation officer assigned to the case, an individual whose possession of the allegedly defamatory information could contribute to the lawful protection of the children's best interests. While it is true that the cloak of a qualified immunity may also serve to protect commentary of dubious probative worth, the policy interests furthered by recognition of the privilege serve as a counterweight to any incidental harm which may result *(see, Toker v Pollak, supra; Stukuls v State of New York, supra; Martirano v Frost, supra,* 25 NY2d, at 508; Sack, Libel, Slander and Related Problems § V1.3.1, at 298; 50 Am Jur 2d, Libel and Slander, § 196, at 700). Accordingly, we conclude "that the application of a qualified privilege provides the necessary balance by fostering disclosure of information of public import other than that conveyed maliciously" *(Toker v Pollak, supra,* at 223).

## VI

Having concluded that the defendant's communication is protected by a qualified privilege, it must be determined whether, in opposition to the defendant's motion for summary judgment, the plaintiff presented evidentiary proof that the statements contained in the letter were motivated by actual malice *(see, Toker v Pollak, supra; Dunajewski v Bellmore-Merrick Cent. High School Dist., supra; Licitra v Faraldo, supra).* Significantly, "[i]t is well settled that summary judgment is properly granted where a qualified privilege obtains and the plaintiffs offer an insufficient showing of actual malice" *(Trails W. v Wolff,* 32 NY2d 207, 221).

As the Court of Appeals has observed in similarly reviewing a plaintiff's affidavit in order to ascertain whether a showing of malice had been made, "there is a positive requirement that [the affidavit] must show evidentiary facts *(O'Meara Co. v. National Park Bank,* 239 N. Y. 386, 395) and that a

motion for summary judgment may not be defeated by charges 'based upon surmise, conjecture and suspicion' *(Bank for Savings* v. *Rellim Constr. Co.,* 285 N. Y. 708-709)" *(see, Shapiro v Health Ins. Plan,* 7 NY2d 56, 63, *supra; Ashcroft v Hammond,* 197 NY 488, 495-496; *see also, Licitra v Faraldo, supra; Kaplan v MacNamara,* 116 AD2d 626, *lv denied* 68 NY2d 607, *supra).* It is for the plaintiff "to show that he had facts available to prove such malice" *(Shapiro v Health Ins. Plan, supra,* at 64). Review of the papers submitted by the plaintiff in opposition to the defendant's motion for summary judgment reveals that he has failed to discharge this burden.

In order to satisfy the standard of actual malice the communication involved " ' " 'must be * * * consistent only with a desire to injure the plaintiff to justify * * * [sending] the question of malice to the jury' " ' " *(Stukuls v State of New York, supra,* at 279, quoting from *Fowles v Bowen,* 30 NY 20, 26; *see also, Loewinthan v Le Vine,* 299 NY 372, 375). Moreover, " '[b]y actual malice is meant "personal spite or ill will, or culpable recklessness or negligence" ' *(Hoeppner* v. *Dunkirk Print. Co.,* 254 N. Y. 95, 106)" *(Shapiro v Health Ins. Plan, supra,* at 61; *see also, La Scala v D'Angelo,* 104 AD2d 930). Mere "[f]alsity is not sufficient for an inference of malice" *(Stukuls v State of New York,* 42 NY2d 272, 279, *supra; Shapiro v Health Ins. Plan, supra,* at 61; *Lee v Weinstein,* 116 AD2d 700, *lv denied* 68 NY2d 601; *Kadish v Dressner,* 86 AD2d 622; *Burns v Smith-Corona Marchant,* 36 AD2d 400, 401). Although the plaintiff's affidavit amply conveys his displeasure with the defendant for authoring the letter, there are conspicuously absent allegations of fact from which a jury could infer actual malice *(see, Kaplan v MacNamara, supra).* The portions of the plaintiff's affidavit pertinent to the issue of malice contain assertions, made upon "information and belief", (1) that the defendant "interfered greatly" with the Garsons' marriage by "taking sides", (2) that the defendant was "out to get" him, and (3) that the defendant, during periods when Vicki Garson resided with her, filled Mrs. Garson with "hate and venom" against him. The plaintiff further argues that, "[t]he defendant's familial relationship to my wife and the position she has taken in connection with our divorce action, unequivocally reveals a malicious attempt to smear my good name and reputation". Contrary to plaintiff's contentions, the defendant's letter—when read in its entirety and considered within the context of the events surrounding the Garson divorce proceeding—clearly reveals that its principal

theme is the defendant's concern for the welfare of the children and her desire to see their relationship with their mother improve. The plaintiff has not established otherwise. In short, the plaintiff's allegations of malice—comprised principally of conclusory supposition and accusations—fail to establish personal spite, ill will or culpable recklessness " ' " 'consistent only with a desire to injure the plaintiff' " ' " *(Stukuls v State of New York, supra,* at 279, quoting from *Fowles v Bowen, supra,* at 26; *cf., Shapiro v Health Ins. Plan, supra,* at 64).

In light of the plaintiff's failure to establish the existence of triable issues of fact in respect to the element of actual malice, the order appealed from should be reversed and summary judgment should be granted to the defendant.

BROWN, J. P., KUNZEMAN and BALLETTA, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the defendant's motion is granted, and the complaint is dismissed.