OPINION OF THE COURT
David B. Saxe, J.
In a defamation action, is the qualified privilege known as the "common interest” privilege applicable to comments made by and among members of social organizations?
The parties in these two related defamation actions are all members of an exclusive private tennis club called the East Hampton Tennis Club. The actions involve what amount to complaints made by the defendants Jim Frank and Melanie Tucker about plaintiff Michael Brockman’s alleged conduct at certain tournament tennis matches.
It is undisputed that following those matches, Frank complained to club executives and other members that while participating in a match against Frank, Brockman had "engaged in unsportsmanlike conduct,” had "called [Frank] a fag” and had "referred to [Frank] as a faggot.” Similarly, it is conceded that following the matches, Tucker complained that while a spectator at her matches with Brockman’s wife, Brockman had "engaged in unsportsmanlike conduct,” had "hovered over [Tucker]”, "physically intimidated [Tucker]” and "would not let [Tucker] sit down”, and that Brockman "[was] a disgrace to the Club.”
Brockman denies engaging in any such conduct, and sues both Tucker and Frank for damages claiming that as a result of these allegedly false complaints he was barred from competing in Club tournaments, was "blackballed” from membership in the Town Tennis Club in Manhattan — although he had been sponsored for membership by Morton Janklow, prominent literary agent and president of the Town Tennis Club— and lost business and customers.
Each of the defendants now moves for summary judgment dismissing the complaint.
With respect to the first cause of action, for defamation, the defendants correctly claim the protection of a qualified privilege under the common interest doctrine.
" 'A qualified privilege arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal duty to speak, and the communication is made to a person having a corresponding *401 interest or duty’ ” (Garson v Hendlin, 141 AD2d 55, 60 [2d Dept 1988]). The "common interest” qualified privilege is generally applied where members of an organization discuss among themselves matters of concern to the organization. For instance, in Murphy v Herfort (140 AD2d 415 [2d Dept 1988]), where the defendant physician compiled a list of complaints he had received from hospital staff members regarding the plaintiff anesthesiologist, and presented that list to the members of a hospital committee. The court noted that "the allegedly defamatory statements were made by the defendant, a hospital official, to other hospital officials concerning a matter of concern to the hospital,” and therefore found those statements protected by a qualified privilege (140 AD2d, at 416, supra; see also, Hollander v Cayton, 145 AD2d 605 [2d Dept 1988]). Similarly, in Matter of Kantor v Pavelchak (134 AD2d 352 [2d Dept 1987]), statements made by members of church hierarchy to each other and members of the church council about alleged acts of impropriety by a council member were protected by the qualified privilege.
Although research has disclosed no prior cases applying the common interest privilege to members of tennis clubs or other social or recreational groups, I see no reason to limit the protection of the privilege to professional or employment settings. The sportsmanlike conduct of fellow tennis club members is certainly a matter of substantial concern to the members of a private tennis club. Since all the complained of statements regarding Brockman’s conduct were allegedly made to club executives and members, the policy underlying the qualified privilege (see, Garson v Hendlin, 141 AD2d 55, 61, supra) is equally applicable here to ensure that club members may communicate with their fellow members regarding what they perceive as poor sportsmanship on the part of another member, without opening themselves to tort liability.
Of course, the privilege is not absolute; however, it places on the plaintiff the burden of proof with respect to the defendants’ alleged malice (see, Toker v Pollak, 44 NY2d 211; Murphy v Herfort, 140 AD2d 415, 416, supra).
The plaintiff is unable to offer anything of an evidentiary nature demonstrating the presence of malice, or personal spite, ill will, or culpable recklessness on the part of Frank or Tucker. Rather, he suggests that he will be able to uncover the defendants’ actual malice upon deposing them. This unsupported accusation of malice is not sufficient to permit this *402 action to proceed on the chance that a defendant may offer up some evidence that he or she harbors malice against the plaintiff.
Consequently, the complained of statements are privileged communications and cannot form the basis for the plaintiffs’ first and third causes of action in both complaints.
The second cause of action, alleging that the plaintiff was portrayed in a false light by the defendants’ remarks, must also be dismissed. First, such an action is not recognized in the State (Beverly v Choices Women’s Med. Center, 141 AD2d 89, 95 [2d Dept 1988]; but see, Griffin v Harris, Beach, Wilcox, Rubin & Levey, 112 AD2d 514, 516 [3d Dept 1985]). Furthermore, "[t]o impose liability on such a theory, the publicity complained of must be of a kind that is highly offensive to a reasonable person” (Griffin v Harris, Beach, Wilcox, Rubin & Levey, supra, at 516; see, Arrington v New York Times Co., 55 NY2d 433, 442, cert denied 459 US 1146). In Arrington, the plaintiff objected to the defendant’s use of a photograph of him to illustrate an article about "the black middle class,” which article he claimed depicted the "black middle class” as materialistic, status-conscious and frivolous. The Court of Appeals held that such facts could not suffice to demonstrate the necessary highly offensive publicity (55 NY2d, at 442, supra). Certainly the facts alleged here, where the plaintiff was implicitly being called a name-caller and a poor sport, cannot be said to any more effectively constitute such highly offensive publicity.
Accordingly, both motions are granted and summary judgment is granted dismissing both actions.