Cristina **PETERS**, Plaintiff–Appellant,

v.

**BALDWIN UNION FREE SCHOOL DISTRICT, Board of Education, Baldwin Union Free School District, Jeffrey L. Hollman, Kathy Weiss and Alaina Bressler, Defendants–Appellees.**

**Docket No. 02–7018.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 16, 2002.

Decided: Feb. 12, 2003.

Lewis M. Wasserman (Pamela L. Steen, on the brief), Wasserman & Steen, Patchogue, NY, for Appellant.

Linda M. Cronin (Rocco G. Avallone and Eric S. Crusius, on the brief), Cronin & Byczek, LLP, Lake Success, NY, for Appellees.

Before: LEVAL, CALABRESI, and B.D. PARKER, JR., Circuit Judges.

LEVAL, Circuit Judge.

Plaintiff Cristina Peters, formerly a guidance counselor with the Baldwin Union Free School District, appeals from the ruling of the United States District Court for the Eastern District of New York (Wexler, *J.*), granting judgment as a matter of law to the defendants, her former employers, on her claims for defamation and for violation of the Rehabilitation Act and the New York Human Rights Law. The district court's dismissal of the Rehabilitation Act claim and the analogous state law claim was based on its finding that Peters had failed to show she had a

protected disability within the meaning of the Act, because she failed to show that she was perceived by the defendants as incapable of working in a broad range of jobs. Peters presented evidence from which a reasonable jury could have concluded that the defendants terminated her because they perceived her as suicidal and therefore as substantially limited in her ability to care for herself. This was sufficient to support a claim under the Act and the Human Rights Law. We therefore vacate the dismissal of the Rehabilitation Act and Human Rights Law claims. We affirm the directed verdict dismissing Peters's defamation claim because the allegedly defamatory statements made by Peters's supervisor were within the scope of an employer's qualified privilege to comment on matters affecting the employment.

## BACKGROUND

Cristina Peters is a trained guidance counselor and bilingual teacher. In September 1996, she was hired by the Baldwin Union Free School District ("Baldwin") to work as a Spanish teacher and guidance counselor at Baldwin High School. The following school year, 1997–98, Peters became a full-time guidance counselor at the school. Peters's duties as a counselor included assisting students with selecting courses, choosing colleges, and filling out their college applications. During the 1997–98 school year, Peters was assigned a caseload of about 250 students. At her mid-year evaluation, her professional performance was rated satisfactory, the highest rating available. In February 1998, Baldwin High School principal Jeffrey Hollman recommended to Baldwin superintendent Kathy Weiss that Peters be granted tenure as a guidance counselor.

Peters had a history of serious medical problems, including a facial tumor and neurological impairments, of which her supervisors at Baldwin High School, Hollman and assistant principal Susan Marguilies, were aware. She had ongoing physical symptoms of pain, dizziness, and disorientation, which began to worsen in February 1998. Hollman and Marguilies were solicitous of Peters's health. According to Peters, Hollman and Marguilies stated on several occasions that she was not taking adequate care of herself and her medical needs.

On March 7, 1998, a Saturday, Peters was spending the night at the home of fellow Baldwin guidance counselor Cecilia Jimenez, and the two discussed Peters's physical symptoms. After Peters described to Jimenez some pain she had experienced earlier that day, Peters joked that she could commit suicide with a gun belonging to her husband, a police officer with the New York City Police Department ("NYPD"). Both women later described the conversation as entirely in jest. At school the following Monday, Jimenez mentioned the conversation to Mark Lerner, the school psychologist, who became alarmed and told school officials that Peters was considering suicide. Hollman and Weiss took precautionary steps. Weiss contacted the NYPD in an effort to secure Peters's husband's gun. Weiss and Hollman determined that Peters should be reassigned to administrative duties at the district office, rather than continue to counsel students, until it was clear that she would not attempt suicide. Hollman held a meeting with the guidance office staff, telling them that Peters had undergone a mental breakdown and was being reassigned for health reasons. In a letter dated March 13, Hollman informed parents that Peters would no longer be acting as a guidance counselor "[d]ue to health reasons."

On March 7, at Hollman's request, Peters went to see Dr. Alan Mendelowitz, a psychiatrist, who wrote a note saying that Peters was cleared to return to work. Hollman, however, did not permit Peters to return to her regular duties; instead he sent her to two more doctors, Dr. Allan Rubenstein, a neurologist, and Dr. Allen Reichman, another psychiatrist, both of whom reported that Peters was fit to resume her regular counseling duties. Reichman wrote a letter dated March 26, 1998, which stated that he did not believe that Peters was in danger of suicide and that she was able to return to her regular duties. It was not until April 8, 1998, however, that Hollman and Weiss permitted Peters to leave the district office and return to her regular work as a guidance counselor.

During the time that Peters was working in the district office, Hollman assigned Peters's counseling caseload to Alaina Bressler, formerly an intern in the guidance office. At Hollman's direction, Bressler prepared a list of the problems she found. Problems on Bressler's list included, for example, students who had taken more physical education credits than necessary, inaccurate or incomplete graduation cards, students who had not been counseled about college, and students who were not taking the proper sequence of credits to graduate with a Regents diploma. On April 8, Weiss met with Peters and gave her a memo summarizing the problems Bressler had found. Weiss told her that because of those problems, she would not be granted tenure. On April 27, Peters gave to Hollman a memo responding to the Weiss memorandum, addressing each of the problems that Bressler had identified. Hollman then investigated.

He concluded that there were deficiencies in Peters's work; additionally he believed she may have altered or falsified school documents to cover up problems. According to Peters, however, Hollman told her he did not disagree with her rebuttal of the Bressler list.

In a letter dated June 8, Weiss told Peters that she would not be recommended for tenure at Baldwin because of her "failure to complete assigned tasks" and her "[s]erious performance errors." Then, by letter dated July 2, Weiss informed Peters that, because she had not been recommended for tenure, her employment would be terminated on September 25, 1998.

Peters brought this suit against Baldwin, Hollman, and Weiss. She alleged that the defendants violated the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 296, by terminating her because they perceived her to have a disability. She also brought a common-law defamation claim against Hollman.[1] Peters's claims proceeded to trial on June 3, 2001. Upon the defendants' motion at the close of Peters's case, the district court directed a verdict in favor of the defendants on all of Peters's claims. *See* Fed. R.Civ.P. 50(a)(1). This appeal followed.

### DISCUSSION

■ Peters contends that the district court erred in granting judgment as a matter of law ("JMOL") to the defendants. We review a grant of JMOL *de novo*. *Nelson v. Metro–North Commuter R.R.*, 235 F.3d 101, 105 (2d Cir.2000); *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038–39 (2d Cir.1992). "If,

---

1. Peters also brought a defamation claim against Bressler but relinquished this claim at trial.

drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in [her] favor, there is sufficient evidence to permit a rational juror to find in [her] favor, we must overturn the directed verdict or [JMOL]." *Sir Speedy*, 957 F.2d at 1039.

## I. Peters's Rehabilitation Act claim

■ The Rehabilitation Act provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). The Act protects from discrimination not only those who in fact suffer from a disability, but also those who are perceived by their employers as suffering from a disability, even if the perception is incorrect. *Id.* § 705(20)(B); *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir.1997).

■ Peters contends she comes within the protection of the Act because she was perceived by her employer as having "a physical or mental impairment which substantially limits one or more of [her] major life activities." 29 U.S.C. § 705(20)(B). The evidence she submitted at trial was adequate to show that her employer perceived her as suffering from a mental illness that made her suicidal and in imminent danger of taking her life with her husband's revolver. To determine whether her employer's alleged perception

brought Peters under the protection of the Rehabilitation Act, we must determine whether the condition she was perceived as having was an "impairment" and whether that impairment would "substantially limit" a major life activity. *See Bragdon v. Abbott*, 524 U.S. 624, 630–31, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).[2] "[E]motional or mental illness" is a recognized impairment under the Rehabilitation Act. *See* 29 C.F.R. § 32.3(b)(1)(ii). Nonetheless, the district court dismissed Peters's case because it found that she had not made a showing that the defendants "perceived her to be incapable of working in a broad range of jobs suitable for a person of her age, experience and training." Trial transcript at 569. We need not consider whether the district court was correct in this conclusion, because we find that Peters presented sufficient evidence of a different limitation—one relating to her ability to care for herself. The ability to care for oneself is a major life activity recognized under the Rehabilitation Act; it "encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning [one's] home." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 871 (2d Cir.1998) (citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995)). A mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself. It therefore constitutes a protected disability under the Rehabilitation Act.

Defendants argue that Peters's Rehabilitation Act claim must fail because the evi-

---

**2.** Although *Bragdon* is a case interpreting the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, it and other ADA cases are relevant to our discussion because the Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under ... the Americans with Disabilities Act of 1990 ... as

such sections relate to employment." 29 U.S.C. § 794(d); *see also Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 n. 5 (2d Cir.1998) ("As a general matter, '[b]ecause the ADA and the [Rehabilitation Act] are very similar, we look to caselaw interpreting one statute to assist us in interpreting the other.'") (quoting *Francis*, 129 F.3d at 284 n. 4).

dence establishes that she was terminated because of her poor performance, and because she falsified school records in an effort to cover up her mistakes. A review of the trial record shows, however, that there are unresolved factual disputes on these issues. The trial record does not compel a finding in the employer's favor.

We conclude that Peters presented sufficient evidence to raise a triable issue of fact. We must therefore vacate the district court's grant of judgment as a matter of law on Peters's Rehabilitation Act claim.

## II. Peters's claim under the New York Human Rights Law

■ The district court also granted JMOL to the defendants on Peters's claim under the New York Human Rights Law ("HRL"), N.Y. Exec. Law § 296. The HRL provides broader protection to disabled individuals than the Rehabilitation Act, in that a plaintiff under the HRL is not required to show that a perceived disability substantially limits a major life activity. See Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir.2001). If Peters's evidence was sufficient to survive JMOL on her Rehabilitation Act claim, then a fortiori her HRL claim should have been submitted to the jury. See Ashker v. IBM, 168 A.D.2d 724, 563 N.Y.S.2d 572, 574 (1990) (permitting plaintiff's claim, that she was forced to accept early retirement in violation of HRL because "defendant [allegedly] incorrectly believed plaintiff suffered from a mental impairment," to proceed). The district court's grant of JMOL to the defendants on Peters's HRL claim is vacated.

## III. Peters's defamation claim against Hollman

The district court also granted JMOL in favor of Hollman on Peters's defamation claim. Peters contends this was error because she presented a *prima facie* case that Hollman defamed her in two ways: first, by transmitting Bressler's list of alleged deficiencies to Weiss without investigating them; and second, by telling the guidance staff that she was suicidal.[3]

■ Under New York law, the elements of a defamation claim are "a false statement, published without privilege or authorization to a third party, constituting fault ... and it must either cause special harm or constitute defamation per se." *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1999). Because Hollman is an official of Baldwin, he had a qualified privilege to "make[ ] a bona fide communication upon a subject in which he [had] an interest, or a legal, moral, or social duty to speak, [where] the communication [was] made to a person having a corresponding interest or duty." *Santavicca v. City of Yonkers*, 132 A.D.2d 656, 518 N.Y.S.2d 29, 31 (1987). Hollman, a principal, made statements to guidance counselors and to the Baldwin superintendent about a member of his staff and her ability to carry out her professional duties. Hollman's statements were clearly within the scope of the qualified privilege.[4]

Because Hollman had a qualified privilege to speak, it was Peters's burden to show that Hollman's statements were ei-

**3.** In her Amended Complaint, Peters claimed that Hollman defamed her only by falsely disparaging her professional conduct by transmitting the Bressler list; the complaint does not mention the claim that Hollman's statements to the guidance staff were also defamatory. However, at trial, Peters argued that Hollman defamed her under both theo-

ries, and the defendants do not challenge the scope of Peters's appeal as to both theories.

**4.** Peters argues on appeal that the defendants did not adequately plead qualified privilege. She is correct that qualified privilege is an affirmative defense that must be established by the party advancing the defense. *See Gar-*

ther made with "spite or ill will" or "with a high degree of awareness of their probable falsity." *Liberman v. Gelstein,* 80 N.Y.2d 429, 437–39, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992) (internal quotation marks and alterations omitted). Peters presented no evidence that Hollman evinced ill will towards her, nor that he was motivated by spite in making the statements at issue. She argues on appeal that Hollman's failure to investigate the truth of his statements before making them indicates that he was grossly negligent. But "there is a critical difference between not knowing whether something is true and being highly aware that it is probably false." *Id.* at 438, 590 N.Y.S.2d 857, 605 N.E.2d 344. While the latter will support a defamation claim, the former will not. Here, Peters has presented no evidence that Hollman was aware of a probability that his statements were false. In fact, with respect to Peters's Rehabilitation Act claim (which was based in part on Hollman's alleged statement to the guidance counseling staff that Peters was suicidal), Peters's claim depends on her assertion that he in fact believed his statement to be true. Because Hollman's statements were made with a qualified privilege, we affirm the district court's grant of JMOL on Peters's defamation claim.

### IV. Whether the case should be remanded to a different judge

We find no merit in plaintiff's claim that the case should be assigned on remand to a different trial judge.

*son v. Hendlin,* 141 A.D.2d 55, 532 N.Y.S.2d 776, 780 (1988). The defendants' answer to Peters's complaint pleaded that Hollman had "qualified immunity" rather than qualified privilege. However, the answer also stated that "the defendants acted reasonable [sic] and in good faith in discharging their official duties and responsibilities." It was clear that the defendants placed at issue whether Hollman made his statements in the course of carrying out his responsibilities as school

### CONCLUSION

The judgment of the district court directing a verdict in the defendants' favor on Peters's claims under the Rehabilitation Act and the New York Human Rights Law is vacated. The district court's grant of judgment in favor of Hollman on Peters's defamation claim is affirmed.

Remanded for further proceedings.

principal. Indeed, New York courts have used the terms "qualified privilege" and "qualified immunity" in defamation cases without distinguishing between them. *See id.* at 781. Regardless, we need not determine whether the defendants adequately pleaded Hollman's qualified privilege, because Peters did not raise the issue below, and the trial court had no opportunity to rule on whether defendants' pleading of qualified immunity also sufficed to plead qualified privilege.