## Richard G. Fowles *v.* Henry C. Bowen.

In an action for slander, the plaintiff, to show special damage, may give in evidence the contents of a letter written by the person to whom the slander was uttered, to his partner, advising him to discharge the plaintiff from their employ and stating the substance of the writer's conversation with the defendant, although the letter did not cause the discharge of the plaintiff, but only an examination of his trunks.

In an action for slander, a previous letter written by a partner of the defendant, and with his assent, concerning the plaintiff, is admissible in evidence to show malice.

Words spoken of the plaintiff, while in the employ of the defendant's firm as a clerk, and addressed to a subsequent employer, to the effect that the plaintiff had become such a notorious liar that they could place little or no confidence in him; that they were so strongly impressed with his dishonesty that they had written to a person named to employ a police force to watch him, &c., must be understood as relating to him in his capacity as clerk; and being spoken of him in connection with his business, they are actionable *per se*.

Any charge of dishonesty, against an individual, in connection with his business, whereby his character in such business may be injuriously affected, is actionable.

After a mercantile firm has given to one of its clerks a general recommendation as such, if a partner is led by facts subsequently coming to his knowledge, to change his opinion, it is his right and duty to communicate the facts to a subsequent employer of the clerk, in order to guard him against being misled by the previous recommendation of the firm.

Such a communication, if true, is privileged; and in order to sustain an action thereon for slander, the plaintiff must show it to have been malicious.

In the case of privileged communications, slight evidence of malice may be left to the jury.

Evidence of the falsity of the charge is not sufficient to authorize the inference of malice.

The plaintiff, if he seeks to maintain his action, must show that the charge was false, before he can ask the jury to find the slander to be malicious.

*Appeal from a judgment of the Superior Court of the city of New York, in an action for slander.*

The defendant was one of the firm of Bowen & McNamee, of New York. The plaintiff had been a clerk in their

employ.  On his leaving them, the firm gave him a letter of recommendation, saying that he had attended to his duties in a satisfactory manner.  A few days after, a letter was written to a Mr. Shiletto, of Cincinnati, telling him that since Fowler left them they had heard of his taking several trunks with him, larger than required for his clothing, and requesting him to have some officer to watch him and examine his baggage.  In February succeeding, Cole, with whom the plaintiff was employed at Cincinnati, visited New York, and there the conversation took place which is the subject of this action.  Bowen stated to Cole, in his store, that he desired to set him right in regard to a young man in their employ, viz: Fowler; that he had become such a notorious liar that he could place little or no confidence in him; that he had strong cause to doubt his honesty, and had written to Mr. Shiletto to employ an officer to watch him.  The letter to Shiletto was written by Stone, one of the firm, with the knowledge of Bowen.

The defendant, in his answer, claimed that the words were a privileged communication.  No special damage was shown.  The judge submitted to the jury whether, if the communication was privileged, it was made maliciously, and if so, added that the plaintiff was entitled to damages. The answer also contained an averment of the truth of the words complained of, and the judge instructed the jury that if the defendant failed to prove the truth of the words it was an aggravation of the wrong.

The jury found for the plaintiff for $4,500 damages, and the judgment entered thereon was affirmed by the general term, and the defendant appealed to this court.

*Jno. K. Porter*, for the appellant.

*Charles O'Conor*, for the respondent.

INGRAHAM, J.  Upon the trial of this cause, the plaintiff, to show special damage, was permitted to give in evidence

the contents of a letter written by Cole to his partner, advising him to discharge the plaintiff from their employ, and stating the substance of his conversation with the defendant; that, in consequence of the receipt of that letter, Cole's partner stated its contents to the plaintiff, and went with him to his rooms and examined his trunks, but that he did not discharge him in consequence of that letter. To this evidence the defendant objected. I do not see any good cause for the objection to this evidence. It was a communication from one partner to another, in regard to a matter connected with the interests of the firm, and the natural result of the communication made by the defendant to Cole. As is said in *Terwilliger* v. *Wands* ( 17 N. Y. R. 54), occasions may doubtless occur where the communication of slanderous words by a person who heard them will be innocent; and it is certainly reasonable that when repeated on such an occasion and damages result, the first speaker should be held responsible for the damages as flowing directly and naturally from his wrong. The communication from Cole to his partner was necessary, and the result of the defendant's communication. There can be no doubt, if the instructions of Cole had been followed and the plaintiff discharged, the act would have been the immediate and natural result from the speaking of the words by the defendant, and, as such, admissible in evidence.

The repetition of the slander to a third person without any interest existing to call for the communication, is not admissible; but when the slander is repeated to be connected with instructions injurious to the plaintiff, and necessarily connected with the business or interests of the man to whom the slander was spoken, it may be used for the purpose of showing damage. (*Olmstead* v. *Brown*, 12 Barb. 657.)

The letter of Stone was received in evidence and objected to by the defendant. This letter was written by a partner of the defendant, and there was evidence to show that it

was written with his assent; and the defendant himself told Cole " we have written to Shiletto to employ a police force to watch him." Any other letter written .by the defendant would, under various decisions, be admissible to show malice, although the propriety of that rule has been doubted. (7 John. R. 270; 2 Saunders' Pl. and Ev. 808; *Inman* v. *Foster*, 8 Wend. 609; *Kennedy* v. *Gifford*, 19 Wend. 298.)

If the letter of Cole to Hopkins was admissible, as a necessary consequence of the words spoken by the defendant and connected with Cole's interest, what Hopkins did in connection with or in pursuance of that letter would be admissible evidence. What Cole did affecting the plaintiff in consequence of the defendant's communication to him would be evidence to show damage, and the same things done by his partner, under instructions from him, are subject to the same rule. The ground upon which this was received was, that it tended to show the special damage. Whether or not it made out such damage was a question for the jury or the court after the evidence was received. The failure to do so, and the subsequent direction to the jury to disregard that evidence, cannot have any effect on its admission originally.

It is objected that the words were not *per se* actionable, and, as no special damage was proved, the complaint should have been dismissed. The words were spoken of the plaintiff while in the employ of the defendant, and the charge was that he had become such a notorious liar that they could place little or no confidence in him. That they were so strongly impressed with his dishonesty, that they had written, &c., to employ a police force to watch him. It must be obvious to any one that such words, addressed to an employer in respect to his clerk, must be understood as relating to him in his capacity as clerk. The idea that a man may speak to a merchant about the dishonesty of one employed by him, and be able to separate the charge of

dishonesty from his acts as clerk and place them upon the individual only in his private relations, is delusive. Nothing else could be understood from those words than that the defendant had reason to doubt his honesty while with him; and the preface to the communication showed the intent of the defendant to apply the words to the plaintiff in his capacity as clerk, when he said he desired to set Cole right in regard to a young man in his employ named Fowles. Such words, spoken of a person in connection with his business, are actionable.

Any charge of dishonesty, against an individual in connection with his business, whereby his character in such business may be injuriously affected, is actionable. If spoken of him individually, and not in connection with his office or business, these words would not be actionable. (*Van Tassel* v. *Capron*, 1 Denio, 250.)

The rule is given by JEWETT, J., in *Kinney* v. *Nash* (3 Comst. 177): "The principle is well settled that to maintain an action for words spoken, the words must either have produced a temporal loss to the plaintiff, &c., or they must impute some matter in relation to his particular trade or vocation, and which, if true, would render him unworthy of employment." If there was any question, on the evidence, whether the words were spoken of the defendant in relation to his trade or business, then the decision of it belonged to the jury. The judge on the trial so left it to the jury, and to his instructions as to the law the defendant did not object, except to the submission of any question on that point to them; and that has not been argued here.

But the defendant objects that this communication was privileged, and that without evidence of express malice the court should not have submitted the case to the jury to say whether there was any malice on the part of the defendant. There can be little, if any, doubt that the communication was privileged. The defendant and his

partners had given the plaintiff a recommendation as clerk. That recommendation was in the form of a general letter addressed to no one, and if untrue would have exposed the writers to an action by any one injured thereby. After this was given, the defendant was led, by facts coming to his knowledge, to more inquiry, and on Mr. Cole's visit to this city, while the plaintiff was in his employ, the defendant made to him the communication which forms the subject of this action. There can be no doubt of his right and duty to make such a communication if it was true, and was made to guard Cole against being misled by the letter written by the defendant's firm; and in order to sustain a verdict thereon, the plaintiff must show the communication to have been malicious. There is no proof of express malice. On the contrary, in all the communications of the defendant a desire is expressed to avoid publicity and not unnecessarily injure the plaintiff. The judge, however, submitted to the jury the question whether the communication was made in bad faith, without believing at the time it was made that it was true.

In the case of privileged communications slight evidence of malice may be left to the jury. (*Kelly* v. *Partington*, 24 Eng. Com. L. Rep. 144; 4 B. & Ad. 700.) In the case of *Hastings* v. *Lusk* (22 Wend. 410), malice appears to have been inferred from the want of pertinency of the slanderous words, at the time they were spoken, while the occasion made them privileged, and the question of malice was left to the jury. In that case the chancellor says: " The presumption that there was no malice is not rebutted by the plaintiff merely showing that the charge against him was untrue in point of fact; it must be further shown that the defendant either knew or had reason to believe it was untrue, at the time of the speaking of the words complained of.

In the present case there is no direct proof of malice. The only testimony from which malice could be inferred is the falsity of the charge; but this is not sufficient. (*Harris*

v. *Thompson*, 24 Eng. L. & Eq. Rep. 370.) Jervis, C. J., says: "It must be something consistent only with a desire to injure the plaintiff to justify a judge in leaving the question of malice to the jury." And Williams, J., says: "The mere circumstance of the statement being false, will not suffice to show malice, unless there is some evidence to show that the defendant knew it to be false." At any rate, the want of proof on the part of the defendant, that the slander was true, is not enough; and the plaintiff, if he seeks to maintain his action, must show that the charge was false, before he can ask the jury to find the slander to be malicious.

Selden, J. says in *Lewis & Herrick* v. *Chapman* (16 N. Y. 369), in speaking of privileged communications: "the law ceases to infer malice from the mere falsity of the charge, and requires from the plaintiff other proof of its existence." And the charge of the judge that the law would infer malice from the falsity of .the words, was held to be erroneous. (See also *Child* v. *Affleck*, 17 Eng. Com. Law, 186; *Somerville* v. *Hawkins*, 70 Eng. Com. Law, 583; *Vanderzee* v. *McGregor*, 12 Wend. 546.)

The only evidence in this case relied on to prove malice, as stated by the judge in his charge, was the original letter given when the plaintiff was leaving the defendant's employ, and the conversation with Carter, about the same time. That evidence would hardly be enough to warrant the finding that the words were false, and under the cases cited I think not enough to submit the question of malice to the jury. The judgment should be reversed, and a new trial ordered.

Davies, J., did not sit in the case. All the other judges concurring, judgment reversed.