■ THOMAS E. SAMUELS et al., Respondents-Appellants, v HAROLD BERGER, Appellant-Respondent. [595 NYS2d 231] —In an action to recover damages for defamation, (1) the defendant appeals from so much of an order of the Supreme Court, Suffolk County (Cannavo, J.), dated September 14, 1990, as denied his motion for summary judgment dismissing the complaint, and (2) the plaintiffs cross-appeal from so much of

the same order as held that they were "limited issue public figures".

Ordered that the order is reversed insofar as appealed from, on the law, the motion is granted, and the complaint is dismissed; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and it is further,

Ordered that the appellant is awarded one bill of costs.

The plaintiffs, a marine contracting company and its president, commenced this defamation action in 1987 against the defendant, who is the Director of the New York State Department of Environmental Conservation's Region I, which encompasses Nassau and Suffolk Counties.

The plaintiffs alleged in their complaint that in a 1987 conversation between the defendant and a reporter for *New York Newsday* newspaper, the defendant stated, "Samuels feels he can do whatever he pleases * * * he violates the law every day". The statement was published in a news article in the newspaper entitled "DEC Gets Chance to Reply To Critics of LI Operation".

The defendant interposed an answer denying various allegations and, subsequently, moved for summary judgment dismissing the complaint on the grounds that: (a) the statements are substantially true, because between 1979 and 1987, the plaintiffs accumulated 14 violations of DEC regulations, one of which resulted in the permanent destruction of a wetlands area, and paid various fines based on consent orders, (b) the statements were expressions of his opinion, protected by the First Amendment, (c) the plaintiffs were public figures, and have failed to demonstrate that the statements were false, and that he made the statements with actual malice, (d) he is protected by a qualified privilege, because the issues involved were of interest to him, and on which he had a duty to speak, and the plaintiffs have failed to demonstrate that they were false, and that he made them with express malice or ill-will, and (e) the remarks were not defamatory.

While we agree with the Supreme Court that the plaintiffs were "limited issue public figures", we disagree with its conclusion that there are genuine issues of fact, warranting the denial of summary judgment dismissing the complaint.

Viewed in the context of the whole article, the statements complained of were not defamatory. The question of whether particular words are reasonably susceptible of a defamatory meaning is to be resolved by the court in the first instance

*(see, Aronson v Wiersma,* 65 NY2d 592, 593-594; *James v Gannett Co.,* 40 NY2d 415, 419-420). The statements complained of must be construed in the context of the article or publication as a whole *(see, Julian v American Bus. Consultants,* 2 NY2d 1, 23) and from the standpoint of the average reader *(see, Aronson v Wiersma, supra,* at 594; *Udell v New York News,* 124 AD2d 656).

The statement in issue, i.e., "Samuels feels he can do whatever he pleases * * * he violates the law every day", was contained in an article which generally discussed the ongoing public controversy regarding DEC Region I's practices, policies, and regulations concerning tidal wetlands and the shorelines on Long Island. The article discussed the various criticisms and accusations that have been leveled against the DEC's regional office in Stony Brook, and then stated that DEC officials would have the opportunity to respond to these criticisms at an upcoming meeting. The statements complained of were immediately followed by Samuels' response, "We have been fined eight times since 1977. And those were 'stipulations' because the owners—Huntington Town, Southampton Town, Suffolk County—wanted to pay the fine and keep the project going * * * The average fine was $250. It's regulation by extortion".

In the context in which the alleged defamatory statement was made, an average reader would understand it to be part of the criticisms, accusations, and counter-accusations which had become part of the public controversy surrounding Region I's enforcement of DEC regulations. "The statement complained of will be 'read against the background of its issuance' with respect to 'the circumstances of its publication' " *(James v Gannett Co., supra,* at 420, quoting *Mencher v Chesley,* 297 NY 94, 99), and " '[t]he construction which it behooves a court of justice to put on a publication which is alleged to be libeleous is to be derived as well from the expressions used as from the whole scope and apparent object of the writer' " *(James v Gannett Co., supra,* at 420, quoting *More v Bennett,* 48 NY 472, 475-476).

Applying these standards, there is no basis from which the average reader would draw an inference that Samuels and his company engaged in criminal activities.

Moreover, the plaintiffs are "limited issue public figures", and their claims must fail, since they failed, as a matter of law, to demonstrate that the statements were false, and that the defendant made them with actual malice *(see, New York*

*Times Co. v Sullivan,* 376 US 254; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369).

A plaintiff is held to be a public figure if he or she has thrust himself or herself to the forefront of a particular public controversy in order to influence the resolution of the issues involved *(see, Gertz v Robert Welch, Inc.,* 418 US 323, 345; *see also, James v Gannett Co., supra,* 40 NY2d, at 421). In November 1983, the plaintiffs purchased an advertisement in the *Southampton Press,* in which they attacked, among other things, the DEC's proposed regulations as amounting to the forfeiture of private properties, and as something which "will so severely restrict use of [private properties] as to constitute illegal condemnation". In March 1987, the plaintiffs took out a similar advertisement in the *East Hampton Star.* Moreover, the subject of the destruction of tidal wetlands in Fish Cove by the corporate plaintiff was the subject of *Southampton Press* and *New York Times* news articles. Additionally, the plaintiffs purchased advertising spots on local radio stations to attack the DEC's proposed regulations. The individual plaintiff also spoke at public hearings and, further, wrote a letter to the editor of the *Southampton Press,* in which he accused the DEC of "devious actions on this entire matter, which subverts the Legislature's intent". "The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention" *(James v Gannett Co., supra,* at 422). In the instant case, the activities of the plaintiffs with respect to the DEC's proposed regulations leave no doubt that they attracted publicity and "thrusted themselves into the forefront of a particular public controversy in order to influence the resolution of the issues involved."

Finally, we find that the statements are protected by a qualified privilege, and the plaintiffs failed to set forth facts sufficient to establish that the statements were " 'consistent only with a desire to injure [them] to justify [sending] * * * the question of malice to the jury.' " *(Fowles v Bowen,* 30 NY 20, 25.) Bracken, J. P., Lawrence, Copertino and Pizzuto, JJ., concur.