OPINION OF THE COURT
Joseph J. Maltese, J.
This court awards the defendants statutory costs and attorneys’ fees in these consolidated retaliatory slander actions pursuant to the Health Care Quality Improvement Act of 1986 (HCQIA) found in 42 USC § 11101 et seq.
Facts
The actions arise out of a peer review of Nedunchezian Sithian, M.D. (Dr. Sithian), a vascular surgeon, by Staten Island University Hospital (SIUH). In November of 1993 Dr. Worth, the director of surgery at SIUH, sought an independent outside review of Dr. Sithian’s surgical cases due to a high incidence of morbidity and mortality (M&M) amongst Dr. Sithian’s patients. Dr. Anthony Imparato was appointed to review Dr. Sithian’s cases and he found serious quality of care issues present. Dr. Worth retired in 1995 and was replaced by Dr. Richard Spence who became the director of surgery and chief of vascular surgery. After a review of all vascular surgeons and departmental M&M conferences, and after reading Dr. Imparato’s outside report, Dr. Sithian was suspended from performing complex (index) vascular surgery procedures (aortic, carotid and peripheral arteries) by Staten Island University Hospital.
Following SIUH’s suspension of privileges, Dr. Chang was retained to conduct a peer review of Dr. Sithian’s cases. Dr. Chang, who is a vascular surgeon, was employed by the Albany Medical Center Hospital.
After a three-day hearing before an ad hoc committee of the medical staff of SIUH, at the request of Dr. Sithian, the committee was requested to rule without the report of Dr. Chang. The committee recommended that Dr. Sithian be permitted to perform vascular surgery only with a mandatory preoperative consultation with another vascular surgeon and with another vascular surgeon in the operating room.
Six days later, the hospital received Dr. Chang’s review on July 8,1996. After a review of the records and reports[1] of SIUH, Dr. Chang concluded that Dr. Sithian had failed to provide *412 surgical treatment commensurate with accepted medical and surgical standards and that he should not be permitted to perform index (complex) vascular procedures. The Medical Executive Committee of SIUH then voted unanimously to recommend to their Board of Trustees that the suspension be upheld until Dr. Sithian obtained retraining through an approved vascular surgery fellowship program. That meeting was also attended by Rick Varone in his capacity as chief executive officer of the hospital, but he did not have the right to vote (Bylaws, art XI, § 2 [a]). Dr. Spence, as director of surgery with voting rights, was also present.
On April 25, 1997, while the matter was still under consideration by the Board of Trustees, Dr. Sithian commenced a lawsuit against Dr. Spence (index No. 11442/97). A separate action against Dr. Chang and the Medical Executive Committee was thereafter commenced (index No. 11665/97) for, inter alia, libel, slander and economic interference. Dr. Sithian also filed an administrative complaint with the New York State Public Health Council (PHC).[2] The New York State Public Health Council found no cause to Dr. Sithian’s complaint and determined that the hospital’s decision to suspend him was based upon principles of patient care, patient welfare, the practitioner’s character, competence and the objectives of the institution.
The defendants asserted immunity under Public Health Law § 2805-m (3),[3] Education Law § 6527 (5)[4] and the Health Care Quality Improvement Act (42 USC § 11101 et seq.).
*413 Justice Peter P. Cusick in his decision of January 19, 2000 (Sup Ct, Richmond County) held:
“that all defendants established their rights to immunity from the plaintiffs suit as a matter of law. The retaliatory lawsuits of this nature are precisely what the HCQIA and the State immunity statutes were intended to discourage in order to encourage frank, open, and meaningful medical peer review to monitor the quality of care rendered to patients.”
As a result of Justice Cusick’s decision the defendants moved for costs and attorneys’ fees under the HCQIA, and Justice Cusick calendared the case for that purpose. However, due to the death of Justice Cusick, the motion was reassigned to Justice Gerard H. Rosenberg who held that the defendants were “substantially prevailing parties” under the HCQIA, but denied the motion pending the appeal of Justice Cusick’s decision to the Supreme Court, Appellate Division, Second Department.
The Appellate Division, Second Department, unanimously affirmed Justice Cusick and held that “the Supreme Court properly determined that the plaintiff failed to raise an issue of fact as to whether the defendants were immune from liability for their participation in the professional peer review of the plaintiff’ (Sithian v Spence, 283 AD2d 566 [2001]).
After the appeal, the motion was renewed to this court, for a determination of costs and attorneys’ fees.
Discussion
No New York State court has yet awarded attorneys’ fees under the HCQIA (42 USC § 11113), which states, in part:
“In any suit brought against a defendant, to the extent that a defendant has met the standards set forth under section 11112(a) of this title and the defendant substantially prevails, the court shall, at the conclusion of the action, award to a substantially prevailing party defending against any such claim the cost of the suit attributable to such claim, including a reasonable attorney’s fee, if the claim, or the claimant’s conduct during the litigation of the claim, was frivolous, unreasonable, without foundation, or in bad faith. For the purposes of this section, a defendant shall not be considered to have substantially prevailed when the plaintiff obtains *414 an award for damages or permanent injunctive or declaratory relief’ (emphasis added).
The HCQIA was purposely designed to prevent the chilling effect which this type of lawsuit could have upon the participants in the peer review process. The public is protected when there is a full and frank discussion of a physician’s abilities. The purpose of this statute is to deter groundless suits against participants in the medical peer review process. In passing the HCQIA in 1986, the United States Congress made the following findings:
“(1) The increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.
“(2) There is a national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician’s previous damaging or incompetent performance.
“(3) This nationwide problem can be remedied through effective professional peer review.
“(4) The threat of private money damage liability under Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review.
“(5) There is an overriding national need to provide incentive and protection for physicians engaging in effective professional peer review.” (42 USC § 11101; see generally Austin v McNamara, 731 F Supp 934 [CD Cal 1990] [review of statute’s framework].)
The purpose of the legislation “is to improve the quality of medical care by encouraging physicians to identify and discipline physicians who are incompetent or who engage in unprofessional behavior” (HR Rep No. 903, 99th Cong, 2d Sess 2, reprinted in 1986 US Code Cong & Admin News 6287, 6384).
Clearly the defendants have proven that they were engaged in a legitimate endeavor — to conduct a peer review of Dr. Sithian. Both prior Justices have held that the defendants have satisfied all of the requirements for immunity under the HCQIA. The only issue before this court is whether Dr. Sithian’s “claim, or the claimant’s conduct during the litigation *415 of the claim, was frivolous, unreasonable, without foundation, or in bad faith.” Justice Cusick’s decision held that “there was no evidence that any defendant acted with malice or in bad faith, and the plaintiffs conclusory allegations of malice and speculation that such proof might develop in the future is not sufficient.” Whether a party’s conduct is frivolous or without foundation is left to the discretion of the trial court (Johnson v Nyack Hosp., 964 F2d 116 [2d Cir 1992]).
In order to have commenced his action against Dr. Chang the plaintiff should have had proof of actual malice — to do otherwise was to bring a frivolous lawsuit (see Public Health Law § 2805-m [3]; Education Law § 6527 [5]). In bringing a frivolous lawsuit, the defendants are entitled to reasonable attorneys’ fees and costs (Smith v Ricks, 31 F3d 1478 [9th Cir 1994]).
Additionally, it was bad faith to sue the Medical Executive Committee of SIUH and Dr. Chang while the matter was still under consideration by the Board of Trustees. Such a lawsuit sends a chilling effect to the Board of Trustees that any adverse action will result in personal litigation. “Doctors who are sufficiently fearful of the threat of litigation will simply not do meaningful peer review. The result would be to continue the possibilities for abuse by bad doctors” (HR Rep No. 903, reprinted in 1986 US Code Cong & Admin News at 6385).
Dr. Chang agreed to participate in the peer review to assist the quality of care in his field. He had no contact with Dr. Sithian, and was independent from the hospital. Dr. Chang was not a member of the SIUH Board and practices in the Albany area. His defense of this action has resulted in legal fees of $21,796. The costs of the instant motion have been $1,440. After an examination of the attorney billing records, this court finds the fees charged to be reasonable. Accordingly, the defendant Dr. Chang’s motion for a judgment for attorneys’ fees and costs in the amount of $23,236 is granted.
The defense of SIUH and the members of the Board of Directors of SIUH has resulted in legal fees in the amount $256,034.33 in attorneys’ fees and costs. After an examination of the attorney billing records, this court finds the fees charged to be reasonable. The hospital law firm clearly was lead defense and as a result has larger fees than the counsel for Dr. Chang. However, a line-by-line review of the billing records shows instances of billing for the same work, numerous bills for review of prior work, and some billing items redacted so that the court cannot determine what they are for. Accordingly, the court will *416 reduce the bills as follows:
99.5 hours for Leonard M. Rosenberg at $210 per hour for a total of $20,800.50
52.2 hours for Joseph E. Oliva at $140 per hour for a total of $7,308
80.9 hours for Susan Arden at $140 per hour for a total of $11,326
.6 hours for Andrea Fields at $75 per hour for a total of $45
6.2 hours for Elizabeth Dore at $140 per hour for a total of $868
Accordingly, the fees will be reduced by $40,347.50 for a total billing owed of $215,686.83.

. Dr. Chang was only provided medical charts and not the reports of Drs. Imparato or Spence so as to avoid bias.

. The New York Court of Appeals has held that Public Health Law § 2801-b requires doctors aggrieved by a hospital’s denial of privileges to present their claims to the PHC before pursuing a judicial remedy. (Guibor v Manhattan Eye, Ear & Throat Hosp., 46 NY2d 736 [1978]; accord Matter of Cohoes Mem. Hosp. v Department of Health, 48 NY2d 583 [1979].)

. “There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person, partnership, corporation, firm, society, or other entity * * * on account of any recommendation or evaluation, regarding the qualifications, fitness, or professional conduct or practices of a physician, to any governmental agency, medical or specialists society, or hospital * * * The foregoing shall not apply to information which is untrue and communicated with malicious intent.” (Public Health Law § 2805-m [3].)

. “There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person, partnership, corporation, firm, society, or other entity * * * on account of any recommendation or evaluation, regarding the qualifications, fitness, or professional conduct or practices of a physician, to any governmental agency, medical or specialists society, [or a hospital] * * * The foregoing shall not apply to information *413 which is untrue and communicated with malicious intent.” (Education Law § 6527 [5].)