■ ANTHONY COLANTONIO, Respondent, v MERCY MEDICAL CENTER et al., Appellants. [24 NYS3d 653]—

In an action to recover damages for defamation, the defendants appeal from an order of the Supreme Court, Nassau County (Galasso, J.), dated December 13, 2013, which denied their motion for summary judgment dismissing the fourth, thirteenth, fifteenth, sixteenth, and eighteenth through twenty-second causes of action, and stated portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action of the amended complaint.

Ordered that the order is reversed, on the law, with costs, and the defendants' motion for summary judgment dismissing the fourth, thirteenth, fifteenth, sixteenth, and eighteenth through twenty-second causes of action, and stated portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action of the amended complaint is granted.

The plaintiff is a physician who formerly had privileges at the defendant hospital, Mercy Medical Center (hereinafter Mercy). From approximately July 2007 to November 2007, Mercy received numerous complaints from physicians and other staff members about the plaintiff's behavior. Among other things, there were complaints that the plaintiff raised his voice in the intensive care unit (hereinafter the ICU), made rude and inappropriate remarks in front of patients, confused and intimidated the nurses, made the nurses feel uncomfortable, and made inappropriate entries in patient charts.

The complaints led to a meeting between Mercy's Interim Medical Director, the defendant Joel Yohai, Mercy's Chair of Surgery, the defendant Gregory Zito, and the plaintiff. After explaining their concerns and expectations, Yohai and Zito told the plaintiff that his behavioral problems must come to an end. Thereafter, Yohai and Zito determined that, despite prior warnings and opportunities to improve his problematic behavior, the plaintiff failed to do so. On October 25, 2007, Yohai and Zito informed the plaintiff that they were planning to summarily suspend him pending corrective action, as authorized by Mercy's bylaws. At the plaintiff's request, he was allowed to

take a voluntary leave of absence in lieu of suspension. As pertinent to this appeal, Mercy's bylaws set forth a process to adjudicate any requested corrective action that could result in a revocation or suspension of privileges, or revocation or suspension of medical staff membership. On November 13, 2007, Yohai and Zito requested that Mercy's Medical Staff Executive Committee (hereinafter the EC) take corrective action to address the plaintiff's disruptive and problematic behavior. Pursuant to the bylaws, the EC scheduled an initial meeting of Mercy's Credentials Committee to review the matter, and notified the plaintiff about the meeting.

On November 27 and 28, 2007, the Credentials Committee convened to review the plaintiff's conduct and recommend the appropriate corrective action, if any. Yohai appeared as a witness and referenced complaints contained in the plaintiff's quality assurance file, including complaints of inappropriate entries in medical charts, failure to follow protocols, and repeated reports of interpersonal problems with staff and colleagues. Yohai told the Credentials Committee that the plaintiff repeatedly failed to heed warnings and counseling sessions about his problematic behavior. The plaintiff and other witnesses also appeared at the Credentials Committee meeting. Some of the plaintiff's proffered witnesses declined to appear, and those who came to speak on his behalf did not have a chance to do so because the plaintiff used up his allotted time. The Credentials Committee unanimously recommended that the plaintiff's clinical privileges and membership on the medical staff at Mercy be suspended, and this recommendation was memorialized in a letter dated December 3, 2007. On December 11, 2007, the EC exercised its authority under Mercy's bylaws, and modified the recommendation of the Credentials Committee. By a vote of 18 to 3, the EC recommended termination of the plaintiff's clinical privileges and medical staff membership.

Pursuant to Mercy's bylaws, the plaintiff had 30 days to request a hearing before an ad hoc committee comprised of members of the attending medical staff, in order to review the EC's recommendation to terminate his privileges at Mercy. However, it does not appear that the plaintiff made such a request.

Shortly after the EC made its recommendation to terminate the plaintiff's clinical privileges and medical staff membership, the plaintiff began making public and private complaints about the quality of care at Mercy. Among other things, he made complaints about Mercy in print and broadcast media, in correspondence to the Joint Commission on Healthcare Accredita-

tion, in "broadcast faxes" to Mercy medical staff members, and in correspondence to Pope Benedict XVI.

On February 6, 2008, the plaintiff commenced the instant action, asserting 18 causes of action to recover damages for defamation based on allegations of false statements made by certain personnel at Mercy prior to and during the Credentials Committee meeting. Thereafter, Mercy and various staff members held a press conference, disseminated a memorandum, and published a newspaper advertisement, which the plaintiff alleged further defamed him. This led the plaintiff to file an amended complaint adding five defendants and four causes of action.

Before any discovery occurred, the defendants moved, inter alia, for summary judgment dismissing the amended complaint. In an order entered December 8, 2008, the Supreme Court denied the motion. In a decision and order dated May 18, 2010, this Court modified the order entered December 8, 2008, so as to grant those branches of the defendants' motion which were for summary judgment dismissing the first, sixth, seventh, ninth, tenth, and seventeenth causes of action, as well as various portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action, on the ground that they were based on statements which constituted nonactionable opinion (*see Colantonio v Mercy Med. Ctr.*, 73 AD3d 966 [2010]).

Subsequently, the plaintiff was deposed. In November 2012, he filed a note of issue which included a notation that "EBT's are currently continuing. Per order disclosure may continue post Note of Issue." After the note of issue was filed, the plaintiff was deposed again, and Yohai and a nonparty physician were also deposed.

Thereafter, the defendants moved for summary judgment dismissing the fourth, thirteenth, fifteenth, sixteenth, and eighteenth through twenty-second causes of action, and the portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action that remained after this Court's decision and order dated May 18, 2010. This motion was supported by the affidavit of Yohai and more than 30 exhibits, including excerpts of the plaintiff's deposition testimony and excerpts of the deposition testimony of a nonparty physician. The plaintiff opposed the motion, relying upon numerous exhibits, including excerpts of Yohai's deposition testimony.

In the order appealed from, the Supreme Court denied the defendants' motion, concluding that, although the defendants demonstrated their prima facie entitlement to judgment as a matter of law under "theories of qualified immunity or

privilege," the plaintiff "raised genuine and material questions of fact and credibility as to whether the alleged defamatory statements . . . were made with malice and/or actual malice . . . and/or were knowingly false." The court also determined, among other things, that the defendants' assertion that they were entitled to judgment as a matter of law on the basis of absolute privilege was unavailing. The defendants appeal.

At the outset, we find no merit to the defendants' contention that certain statements at issue lacked defamatory import (*see generally Thomas H. v Paul B.*, 18 NY3d 580 [2012]; *Geraci v Probst*, 15 NY3d 336 [2010]; *Stuart v Porcello*, 193 AD2d 311, 313 [1993]). Similarly, the defendants' contention that certain statements at issue constitute nonactionable opinion has already been determined by this Court on the prior appeal (*see Colantonio v Mercy Med. Ctr.*, 73 AD3d at 968).

To the extent that the plaintiff argues that the subject motion was an improper successive summary judgment motion, his argument is without merit. The subject motion did not violate the general proscription against successive summary judgment motions because it was based on deposition testimony which was not elicited until after the issuance of the prior order denying the defendants' first motion for summary judgment (*see Alaimo v Mongelli*, 93 AD3d 742, 743 [2012]; *Auffermann v Distl*, 56 AD3d 502 [2008]; *Staib v City of New York*, 289 AD2d 560, 561 [2001]; *cf. Vinar v Litman*, 110 AD3d 867, 868 [2013]).

The Supreme Court correctly determined that the defendants were not entitled to judgment as a matter of law dismissing the portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action that remained after this Court's decision and order dated May 18, 2010, on the basis of absolute privilege. These causes of action are predicated upon statements made during the Credentials Committee meeting. "Public policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action" (*Toker v Pollak*, 44 NY2d 211, 218 [1978]). Such communications are deemed privileged, either absolutely or qualifiedly (*see id.* at 218-219). Communications afforded an absolute privilege are protected irrespective of the communicant's motives, and the privilege is generally granted only to those individuals participating in a public function, such as legislative, executive, judicial, or quasi-judicial proceedings (*see id.* at 219; *see also Rosenberg v MetLife, Inc.*, 8 NY3d 359, 365 [2007]; *Wiener v Weintraub*, 22 NY2d 330, 331-333 [1968]).

Here, contrary to the defendants' contention, the alleged defamatory statements made during the Credentials Committee meeting were not entitled to absolute privilege, because the meeting was not quasi-judicial in nature (*see Toker v Pollak*, 44 NY2d at 218-219; *cf. Rosenberg v MetLife, Inc.*, 8 NY3d at 366-367, 371). Mercy's bylaws provide that a Credentials Committee meeting is preliminary in nature, that the meeting does not constitute a hearing as defined elsewhere in the bylaws, and that the procedures applicable to a hearing do not apply (*cf. Toker v Pollak*, 44 NY2d at 222; *Romeo v Village of Fishkill*, 248 AD2d 700, 701 [1998]). Moreover, pursuant to Mercy's bylaws, neither the Credentials Committee nor the EC was empowered to grant any tangible form of relief reviewable on appeal in the courts, and neither body purported to make a final determination regarding the plaintiff's privileges and medical staff membership at Mercy (*see Toker v Pollak*, 44 NY2d at 222; *Allan & Allan Arts v Rosenblum*, 201 AD2d 136, 139-141 [1994]).

However, the defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action that remained after this Court's decision and order dated May 18, 2010, which are predicated upon statements made during the Credentials Committee meeting, on the basis of qualified privilege under 42 USC § 11111 (a). The defendants established, prima facie, that they were entitled to a qualified privilege under 42 USC § 11111 (a), part of the Health Care Quality Improvement Act, which creates a qualified privilege for information provided in medical peer review proceedings concerning the competence or professional conduct of a physician, "unless such information is false and the person providing it knew that such information was false" (42 USC § 11111 [a] [2]; *see Jenkins v Methodist Hosps. of Dallas, Inc.*, 2004 WL 3393380, *15-16, 2004 US Dist LEXIS 28094, *47 [ND Tex, Aug. 14, 2004, No. 3:02-CV-1823-M], *affd* 478 F3d 255 [5th Cir 2007]; *Hurwitz v AHS Hosp. Corp.*, 438 NJ Super 269, 289, 103 A3d 285, 297 [2014]; *see also Sithian v Staten Is. Univ. Hosp.*, 189 Misc 2d 410 [Sup Ct, Richmond County 2001], *affd sub nom. Sithian v Spence*, 300 AD2d 387 [2002]). In opposition, the plaintiff failed to raise a triable issue as to whether the defendants knowingly provided false information (*see* 42 USC § 11111 [a] [2]).

Moreover, we agree with the Supreme Court's determination that, on this record, the defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing

the portions of the second, third, fifth, eighth, eleventh, twelfth, and fourteenth causes of action that remained after this Court's decision and order dated May 18, 2010, as well as the fourth, thirteenth, fifteenth, sixteenth, and eighteenth causes of action. With respect to these causes of action, which are predicated upon allegedly defamatory statements made both during and prior to the Credentials Committee meeting, the defendants established, prima facie, that they were entitled to a qualified privilege of common interest (*see Liberman v Gelstein*, 80 NY2d 429, 437 [1992]; *Toker v Pollak*, 44 NY2d at 222), under state statutory law (*see* Public Health Law §§ 2805-j [2]; 2805-m [3]; Education Law § 6527 [3], [5]), and under Mercy's bylaws (*see Colantonio v Mercy Med. Ctr.*, 73 AD3d at 969). However, we disagree with the court's determination that, in opposition, the plaintiff raised a triable issue of fact as to whether the statements were made with malice (*cf. Kehm v Murtha*, 286 AD2d 421, 422 [2001]).

Generally, communications "protected by a qualified privilege are not actionable unless a plaintiff can demonstrate that the declarant made the statement with malice. Malice in this context has been interpreted to mean spite or a knowing or reckless disregard of a statement's falsity" (*Rosenberg v MetLife, Inc.*, 8 NY3d at 365). On the prior appeal, which involved a motion made before the benefit of discovery, we determined that the plaintiff raised a triable issue of fact as to whether the statements were made with malice (*see Colantonio v Mercy Med. Ctr.*, 73 AD3d at 969). However, after examining the record presently before us, we find that the plaintiff failed to raise a triable issue of fact as to whether the statements made prior to and during the Credentials Committee meeting were made with malice. Under all the circumstances, it is evident that these statements were made by various personnel at Mercy, including physicians and nurses. Many of the statements described how the plaintiff conducted himself in the ICU, and how the plaintiff interacted with patients and coworkers at the hospital. These statements were made to hospital administrators to address concerns about the plaintiff's behavior, either upon the declarant's initiative or as part of a request by Mercy to contribute to the corrective action process. Although the plaintiff asserts that certain individuals made false statements about him in retaliation for his attempts to raise concerns about the quality of care at Mercy, he failed to substantiate his claims. His submissions demonstrated, at best, that he and other hospital employees had differences of opinion about certain procedures and policies at the hospital. Contrary to the plaintiff's contention, he failed to set forth facts suf-

ficient to establish that any statements by his coworkers and colleagues were " 'consistent only with a desire to injure [him] to justify [sending] . . . the question of malice to the jury' " (*Samuels v Berger*, 191 AD2d 627, 630 [1993], quoting *Fowles v Bowen*, 30 NY 20, 25 [1864]). The mere fact that, over the course of approximately 10 years, the plaintiff made complaints about certain physicians and personnel that included his views about the quality of care at Mercy, does not raise a triable issue as to whether the subject statements made by the defendants were made with a "high degree of awareness of their probable falsity" (*Garrison v Louisiana*, 379 US 64, 74 [1964]; *see Liberman v Gelstein*, 80 NY2d at 438-439), or that "malice was the one and only cause for the publication" (*Stukuls v State of New York*, 42 NY2d 272, 282 [1977]; *see Liberman v Gelstein*, 80 NY2d at 438-439).

With respect to the nineteenth through twenty-second causes of action, which are predicated upon statements made by certain defendants after the plaintiff commenced this action and made numerous public complaints about the quality of care at Mercy, the defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that the plaintiff is a limited-purpose public figure (*see Gertz v Robert Welch, Inc.*, 418 US 323, 351 [1974]; *Samuels v Berger*, 191 AD2d at 627), as they did on their first summary judgment motion (*see Colantonio v Mercy Med. Ctr.*, 73 AD3d at 969). In opposition, the plaintiff failed to raise a triable issue of fact as to whether the statements were made with actual malice (*see generally Samuels v Berger*, 191 AD2d at 627). This record clearly demonstrates that, after the EC made its recommendation to terminate the plaintiff's privileges and medical staff membership, the plaintiff commenced a public campaign of making disparaging remarks about Mercy's operations and quality of care. Notably, Yohai averred that, prior to the EC making its recommendation to terminate the plaintiff's privileges, the plaintiff had never externally aired any purported concerns regarding patient care at Mercy. In response to the media attacks by the plaintiff, the EC took several steps. Among other things, it held a press conference with the stated purpose of raising awareness about the allegedly false information that had been disseminated about patient care and clinical safety at Mercy. At the press conference, the vice president of the EC, who is one of the named defendants, proclaimed that the allegations that patients were in danger at Mercy were not true. Another defendant physician stated that the plaintiff's unsubstantiated claims were part of a calculated effort to damage Mercy's reputation to achieve

retribution for disciplinary action taken by his peers. Under these and all the circumstances present in this record, we conclude that the plaintiff failed to raise a triable issue of fact as to whether the statements made by the defendants after the EC made its recommendation to terminate his privileges were made with actual malice (*see Stuart v Porcello*, 193 AD2d 311, 313 [1993]; *cf. Samuels v Berger*, 191 AD2d at 627).

The plaintiff's contention that an award of summary judgment would be premature because of outstanding discovery is without merit. Among other things, he argues in his brief that he "clearly should be given the opportunity to depose each and every one of the Appellants." Contrary to his contention, the plaintiff failed to demonstrate that discovery might lead to relevant evidence or that the facts essential to justify opposition to the second summary judgment motion were exclusively within the knowledge and control of the movants (*see Williams v Spencer-Hall*, 113 AD3d 759, 760 [2014]; *Brabham v City of New York*, 105 AD3d 881, 883 [2013]). "The mere hope or speculation that evidence sufficient to defeat a motion for summary judgment may be uncovered during the discovery process is insufficient to deny the motion" (*Lopez v WS Distrib., Inc.*, 34 AD3d 759, 760 [2006]).

Based on the foregoing, the Supreme Court should have granted the defendants' motion in its entirety.

In light of our determination, we need not reach the defendants' remaining contentions that they were entitled to the qualified privilege of reply, that they were entitled to summary judgment because the plaintiff failed to plead special damages, and that they established, prima facie, the truth of certain alleged defamatory statements. Mastro, J.P., Dickerson, Roman and Maltese, JJ., concur.