Matter of W.S. v G.S. (2025 NY Slip Op 25024)

[*1]

Matter of W.S. v G.S.

2025 NY Slip Op 25024

Decided on January 29, 2025

Family Court, Kings County

Markoff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 29, 2025
Family Court, Kings County

In the Matter of a Proceeding Under Article 8 
 of the Family Court Act W.S., Petitioner,

against
G.S., Respondent.

Docket No. O-13088-22

Christine Theodore, Esq. appeared on behalf of the petitioner W.S. 
Marc Merolesi, Esq. appeared on behalf of the respondent G.S. 

Robert A. Markoff, J.

I. Introduction
In this family offense proceeding, the petitioner alleges, inter alia, that the respondent committed the family offense of harassment in the second degree (Penal Law § 240.26[3]) by, inter alia, engaging in a course of conduct against him, including threatening "further consequences" if he did not withdraw a family offense petition that he had filed against another family member, and then followed upon that threat by making false statements in support of an Article 9 Mental Hygiene petition (hereinafter MHL petition) which resulted in the petitioner's arrest. For the reasons set forth herein, this Court holds that the respondent's statements made in support of a Mental Hygiene petition are subject to a qualified privilege, and shall be deemed to have a "legitimate purpose" within the meaning of Penal Law § 240.26 (3) unless the petitioner establishes, by a preponderance of the evidence, that the respondent's statements were made with a knowing or reckless disregard of their falsity and with the conscious objective to alarm or seriously annoy the petitioner. Applying that standard and considering the totality of the evidence submitted on all the petitioner's claims, this Court finds that the petitioner failed to carry his burden to establish, by a preponderance of the evidence, that the respondent committed a family offense against him.
II. Factual and Procedural History
On July 22, 2022, the petitioner W. S. filed a family offense petition against the respondent G. S. The petitioner and the respondent are siblings who live in the same house. The petitioner lives in the basement apartment, and the respondent lives on the top floors. The petition alleges that on December 21, 2021, the respondent sent him a text message stating, [*2]"[W.S.] retract the restraining order against [M. C.], or there will be further consequences. Thank you your sister [G. S]." Thereafter the respondent allegedly harassed the petitioner by, inter alia, keeping the lights out in the yard "causing a dangerous condition," and "speaking ill" of the petitioner. The petition further alleges that on February 25, 2022, the respondent had the petitioner taken by the police to Kings County Supreme Court with "false claims" that the petitioner was dangerous, violent, and had access to firearms. The petitioner also alleges that to further harass him the respondent is holding his possessions and valuables "hostage in the attic." 
A fact-finding hearing was held on May 10, 2024, May 17, 2024, October 24, 2024, December 5, 2024, and January 8, 2025. The petitioner was represented by Christine Theodore Esq., and the respondent was represented by Marc Merolesi, Esq.
On his case, the petitioner offered his own testimony and seven exhibits. The petitioner testified, inter alia, that on February 25, 2022, police officers came to his home with shields and guns drawn. The petitioner was arrested and transported to Kings County Supreme Court Mental Hygiene Part. After about 90 minutes, the MHL petition was denied, and the petitioner was released. The petitioner testified that at the time of his arrest, he was wearing slippers, and that, upon his release, he had to take the subway home in the rain.
The petitioner submitted a copy of an order, dated February 25, 2022, to the effect that the Supreme Court (Mostofsky, J.) denied the MHL petition. In its order, the Supreme Court noted that G. S. had not seen W. S. since August 2021. G. S.'s claim that W. S. was hoarding was supported only by a photograph taken in 2020, and G. S.'s allegation that W. S. had firearms was supported by G. S.'s allegation that she saw W. S.'s firearms "at a country home" that W. S. owned 8 years prior. The Supreme Court determined that the allegations were stale and that there was no "apparent reason" why the MHL petition was filed. In its order, the Supreme Court noted that "it appears to be some type of family dispute."
After the petitioner rested, the respondent moved to dismiss for failure to establish, prima facie, that a family offense was committed. This Court reserved decision on the oral motion. On her case, the respondent introduced her own testimony, the testimony of the petitioner's and respondent's sibling H. C., and 33 exhibits.
The respondent testified that in February 2022, she heard the petitioner loudly chanting from the basement apartment, "bitch whore cunt death to infidels." The respondent believed that the petitioner was directing his chanting specifically at her. At the time, she was disabled and required the assistance of a cane. As such, she felt vulnerable and fearful of the petitioner. The respondent testified that she called the police, who then directed her to go to the Mental Hygiene Part in Supreme Court Kings County. The respondent, accompanied by her sister H. C., then filed the MHL petition in which respondent claimed that W. S. had mental health issues, that he was a "hoarder", that he drinks alcohol, that he smokes cigarettes, and that she is afraid that the building will catch on fire. Neither the petition itself nor any written statements submitted to the Kings County Supreme Court Mental Hygiene Part were introduced into evidence. 
The respondent testified that when she filed the MHL petition, she was aware of the petitioner's history of mental illness, and that she believed that the petitioner was supposed to be on medication. She did not believe that the petitioner had been taking the medication. She testified that he was a "hoarder," which she based upon her observations of the conditions that were present in his home and around the shared property. The respondent proffered numerous photographs depicting the petitioner's home and living space prior to renovations that were made to the house in 2019. The photographs corroborated the respondent's testimony regarding the [*3]dirty, unsanitary, and cluttered condition of the petitioner's home prior to the renovations. The respondent also submitted more recent photographs depicting the shared backyard space. These photographs showed various objects in the backyard that the respondent believed were cluttering up the yard, making it unusable for her, and causing a dangerous condition.
The respondent testified that when she filed the MHL petition, she was afraid of the petitioner because she believed he was violent. The respondent testified that she filed the MHL petition upon hearing the petitioner chanting "bitch whore cunt death to infidels" from the basement apartment. Further, she testified that in August 2020, the petitioner had approached her screaming and cursing at her calling her a "bitch cunt whore." As she tried to step into her home, the petitioner caused her to fall into her coat closet. According to the respondent, the petitioner stuck his foot in her doorway to prevent her escape. She also testified that the petitioner had admitted to having punched holes in walls in the house, and that she had observed various holes in the walls. The respondent introduced photographs depicting the holes in the walls. The respondent testified that she had seen the petitioner's guns in his house in upstate New York, and that "guns were everywhere" in that house. She did not know whether the petitioner still possessed those guns but was afraid that he did.
As to the text message that she sent the petitioner on December 21, 2021, she testified that her threat of "further consequences" meant that she would "close off emotional contact" and stop socializing with him. It meant that she would no longer lend him her credit card, and that she would no longer invite him to dinner at her home. She denied any intention to physically threaten him. She claimed that the reasons that she filed the MHL petition were that she wanted a social worker to observe the conditions in the petitioner's home and to protect him. Additionally, she testified that she was genuinely afraid of fire hazards caused by the petitioner.
H. C. testified that she accompanied the respondent to Kings County Supreme Court to file the MHL petition. She testified that the petitioner was a "hoarder" because his home contained piles of newspapers, bags of rice, rusty cans, cat excrement, empty beer bottles, and bottles of urine. She testified that there were piles of garbage all over his home. H. C. also testified that the petitioner was regularly drunk, and that she too had seen guns at W. S.'s house in upstate New York. 
III. Analysis
"In a family offense proceeding, the petitioner has the burden of establishing, by a fair preponderance of the evidence, that the charged conduct was committed as alleged in the petition" (Matter of Cassie v Cassie, 109 AD3d 337, 340 [2d Dept 2013]; see Matter of Richardson v Brown, 173 AD3d 875 [2d Dept 2019]; Bah v Bah, 112 AD3d 921, 921-922 [2d Dept 2013]). "The petitioner's case may not be based upon allegations not charged in the petition" (Boutin v Boutin, 232 AD3d 727, 727 [2d Dept 2024][internal quotation marks and citations omitted]).
A person is guilty of harassment in the second degree under Penal Law § 240.26(1) when, "with intent to harass, annoy or alarm another person", he or she "strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." "Evidence of a genuine threat of physical harm backed by the ability to carry it out is sufficient to prove harassment in the second degree" (Czop v Czop, 21 AD3d 958, 959 [2d Dept 2005]; see Monos v Monos, 123 AD3d 931, 931 [2d Dept 2014]). Only genuine threats of physical harm fall within the scope of the statute, not mere outbursts (see People v Dietze, 75 NY2d 47, 53, 54 [1989][threat to "beat the crap out of (complainant) some day or some night in [*4]the street" was not, in itself, actionable without other proof confirming that threat was serious]). 
Here, the petitioner failed to establish, by a preponderance of the evidence, that the respondent ever physically harmed or made a genuine threat to physically harm him. The petitioner did not interpret respondent's December 21, 2021 threat of "further consequences" to mean a genuine threat that the respondent would physically harm him. The petitioner testified that he believed that the respondent, along with M. C. and H. C., were looking to harm him in one way or another, but not physically. Given that the respondent's warning of "further consequences" was not intended to be genuine threat of physical harm, it is not actionable under Penal Law § 240.26(1).
A person is guilty of harassment in the second degree under Penal Law § 240.26(3) when "with intent to harass, annoy or alarm another person he or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person, and which serve no legitimate purpose." "A person acts with the intent to harass, annoy or alarm a person when his or her conscious objective or purpose is to do so" (CJI2d[NY] Penal Law § 240.26; see Penal Law § 1505[1]). "The intent element may be inferred from the surrounding circumstances" (Matter of Richardson v Brown, 173 AD3d 875, 876-877 [2d Dept 2019]; Matter of Putnam v Jenney, 168 AD3d 1155, 1155 [2d Dept 2019]; Matter of Washington v Washington, 158 AD3d 717, 718 [2d Dept 2018]). Conduct that serves "no legitimate purpose" means that the conduct lacks any "expression of ideas or thoughts other than threats and/or intimidating or coercive [conduct]" (see CJI2d[NY] Penal Law 240.26; People v Shack, 86 NY2d 529, 535 [1995]).
The petitioner's claim of harassment in the second degree under Penal Law § 240.26(3) is premised, in part, upon allegations that the respondent threatened "further consequences" in her text message dated December 21, 2021, and then followed upon that text message by filing the MHL petition claiming that the petitioner was dangerous, violent, and had access to firearms, which resulted in the petitioner's arrest. At trial, the respondent argued, in effect, that she genuinely feared the petitioner based upon his past and recent behavior; and that her communications with Kings County Supreme Court Mental Hygiene Part were not intended to alarm or seriously annoy the petitioner but rather served a "legitimate purpose" within the meaning of Penal Law § 240.26(3).
"Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether" (Liberman v Gelstein, 80 NY2d 429, 437 [1992]; Toker v Pollak, 44 NY2d 211, 218-220 [1978]; see Colantonio v Mercy Med. Ctr., 135 AD3d 686, 689 [2d Dept 2016]). "Communications falling within this category are deemed privileged, either absolutely or qualifiedly" (Toker v Pollak, 44 NY2d at 219). "A qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest" (Toker v Pollak, 44 NY2d at 219).
A communication made by an individual to a law enforcement officer is subject to a qualified, not absolute, privilege (Stega v New York Downtown Hosp., 31 NY3d 661, 670 [2018]; Toker v Pollak, 44 NY2d at 220; Sagaille v Carrega, 194 AD3d 92 [1st Dept 2021]; Mohen v Stepanov, 59 AD3d 502, 504-505 [2d Dept 2009]; Chapo v Premier Liquor Corp., 259 AD2d 1050 [3d Dept 1990][defendant was "entitled to a qualified privilege for communications made in good faith to the police regarding the commission of a crime"]; Christenson v Gutman, 249 AD2d 805, 807 [3d Dept 1998][qualified privilege applied to calls reporting child abuse to [*5]local Department of Social Services]). Communications "protected by a qualified privilege are not actionable unless a plaintiff can demonstrate that the declarant made the statement with malice. Malice in this context has been interpreted to mean spite or a knowing or reckless disregard of a statement's falsity" (Rosenberg v MetLife, Inc., 8 NY3d 359, 365 [2007]; see Colantonio v Mercy Med. Ctr., 135 AD3d at 691; Sagaille v Carrega, 194 AD3d at 95). A qualified privilege places the burden of proof on the petitioner to show that the communications were not made in good faith but were motivated solely by malice (see Mohen v Stepanov, 59 AD3d at 505; see also Stega v New York Downtown Hosp., 31 NY3d at 673; Toker v Pollak, 44 NY2d at 219). A declarant whose communications are subject to a qualified privilege has no burden of showing lack of malice (see Stega v New York Downtown Hosp., 31 NY3d at 673).
Here, the respondent's filing of a MHL petition seeking assistance from the Kings County Supreme Court Mental Hygiene Part is the type of communication that is subject to a qualified privilege. Conduct, including communications, that are made with a legitimate purpose do not constitute harassment in the second degree under Penal Law § 240.26(3). Given the foregoing, this Court holds that communications that are protected through the application of the qualified privilege necessarily have a "legitimate purpose" within the meaning of Penal Law 240.26(3), and therefore cannot be a basis for a claim of harassment in the second degree under Penal Law § 240.26(3). Thus, communications subject to a qualified privilege shall be deemed to have a "legitimate purpose" within the meaning of Penal Law § 240.26(3) so long as (1) they are not made with a knowing or reckless disregard of their falsity; and (2) are not made solely to alarm or seriously annoy the petitioner.
Applying that standard, here, and having had the opportunity to observe the demeanor of the witnesses and assess their credibility, the Court finds that the petitioner failed to demonstrate, by a preponderance of the credible evidence, that the respondent's statements made in support of the MHL petition were made with a knowing or reckless disregard of their falsity, and with the sole purpose of alarming or seriously annoying the petitioner. The petitioner did not offer the MHL petition, or any sworn statements submitted by the respondent to the Kings County Supreme Court Mental Hygiene Part. The petitioner did not submit any evidence as to the condition of his home to rebut the respondent's and H. C.'s claims that there were dangerous conditions in his home in February 2022. The respondent credibly testified regarding her concerns for her personal safety upon hearing the petitioner loudly chanting "bitch whore cunt death to infidels." The evidence demonstrated that there was escalating acrimony between the petitioner, herself, and other family members. The respondent also credibly testified about her fear of the petitioner's behavior and outbursts which she attributed to his untreated mental illness. Notwithstanding that the Supreme Court (Mostofsky, J.) determined that the respondent's MHL petition was based upon stale evidence and perhaps motivated by a family dispute, the petitioner failed to meet his burden in this family offense proceeding of establishing, by a preponderance of the evidence, that the respondent's statements in the MHL petition were made with a knowing or reckless disregard of their falsity, and with the sole purpose to alarm or seriously annoy the petitioner. Under the circumstances, the Court finds that the respondent's filing of the MHL petition is not actionable here, even though the MHL petition was ultimately determined by the Supreme Court Kings County to be lacking in merit under the Mental Hygiene Law. 
Contrary to the petitioner's contentions, the respondent's alleged conduct in keeping "the lights out in the yard," speaking ill of him, or holding his "possessions and valuables hostage in [*6]the attic" either individually, or in combination with other alleged acts, do not constitute harassment in the second degree under Penal Law§ 240.26(3). Indeed, the respondent objected to the petitioner's possessions being kept in her attic, and, in fact, expressed that she wanted those items removed. The petitioner's remaining contentions are without merit.
Accordingly, the petition is DISMISSED with prejudice. The respondent's oral motion seeking dismissal of the family offense petition for failure to make out a prima facie case is academic, and therefore need not be reached.
This constitutes the decision and order of this Court.
Dated: January 29, 2025
Brooklyn, NY
Hon. Robert A. Markoff
Family Court Judge
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.